## CHANEY vs. THE STATE.

[INDICTMENT FOR MURDER.]

1. *Pending causes not governed by provisions of Code.*—In a criminal case which was pending when the Code went into effect, and which is expressly exempted from its provisions by section 12, the prisoner's right to a copy of the *venire* must be determined by the former law.

2. *Prisoner's right to copy of venire.*—Under the law existing before the adoption of the Code, (Clay's Digest, 459, §§ 53, 54,) a person indicted for a capital offense, if in actual confinement, was entitled to have a list of the jurors specially summoned for his trial, not including the regular jurors for the week or term, delivered to him two entire days before the trial ; and if a copy of the entire *venire*, including both the jurors regularly and those specially summoned, was thus delivered to him, he could not have the whole *venire* quashed, nor refuse to proceed with his trial, on account of any defect in the summons of one of the regular jurors.

3. *Declarations of prisoner not admissible evidence for him.*—The acts or declarations of the prisoner are not admissible evidence for him, unless they occurred within the period covered by the criminating evidence, or tend in some way to explain some fact or circumstance proved against him, or to impair or destroy the force of some evidence for the prosecution.

From the Circuit Court of Franklin.

Tried before the Hon. ROBERT DOUGHERTY.

THE prisoner, Robert R. Chaney, was indicted, jointly with one David B. Chaney, as an accessary before the fact, for the murder of David N. Martin by one Christopher Price; but was tried separately. The indictment was found at the September term, 1851, of the circuit court of Lauderdale. The case was removed by the defendants to Franklin county, where a trial was had at the October

term, 1857. On the trial of the prisoner, a bill of exceptions was reserved by him, which states the following facts :

"On Wednesday of the first week of the term, the solicitor moved the court for an order, setting a day for the trial of the defendants, and the summoning of a jury to try them. The court thereupon asked the counsel for the defendants, what number of jurors they desired to have summoned; and they replied, that they desired to have one hundred, the largest number allowed by law. The court then inquired of the clerk, how many jurors had been summoned for the regular panel for the second week; and the clerk having informed the court that thirty jurors had been summoned on said regular panel, the court thereupon made an order, directing the sheriff to summon seventy *tales* jurors, in addition to the regular panel summoned for said second week; and that the prisoners, as well as their counsel, be served with a copy of the same, including the regular panel, two entire days before the next ensuing Monday, which was the day set apart for the trial. In compliance with this order, the sheriff summoned seventy *tales* jurors, and served upon the prisoners' counsel, two days before the day set for the trial, a list of one hundred jurors, as the jury summoned for the trial of said cause, and made his return to the court of said regular and special *venire*. When the cause was called for trial, and the State had announced itself ready, the defendants moved to quash and set aside said *venire ;* and, as ground for said motion, produced and exhibited to the court the *venire* of the regular panel for said second week, with the sheriff's return thereon, showing that he had executed the same on all the persons therein named except Thomas B. Jenkins and Henry Gargess; and further proved, that said Jenkins and Gargess, whose names were included both in the regular and in the special *venire*, had not been summoned at all, either under the regular *venire*, or under the special *venire*. On these facts, the defendants moved to quash said *venire*, because the said order of the court had not been complied with; but the court overruled the motion, and the defendants excepted. The defendants then objected to proceed-

ing further with their trial under said *venire;* but the court overruled their objection, and they excepted.

"The defendants were then, by agreement, ordered to be tried separately. On the trial of said Robert R. Chaney, when the names of the jurors were being put in the hat, the court proposed to direct the clerk to put in with the others the name of said Gargess, who had been sworn as a juror on the regular panel, and had been notified to appear as a juror for the week, by a written notice left by a deputy sheriff at his house; and who .was present in court. The defendant objected to this, and thereupon the court directed the clerk not to put in the names of said Gargess and Jenkins; and neither of said names was put in, but only the names of the ninety-eight jurors who were summoned.

"It was proved on the trial, on cross examination of one Wilson Whitsett, a witness for the State, that some month or two after the April term, 1851, of the circuit court of Lauderdale, the defendant came to his shop, and had a conversation with him; that defendant said in this conversation, that if it had not been for him (defendant), Christopher Price would have killed said David Martin before that; that witness, in reply to this remark, said, 'Why, have you seen Christopher Price?' to which defendant replied, 'No, I have not seen him; but he has been lying out in the hills, and has been fed by his sister, who told me that he had said he would kill Martin; and I sent him word, by his sister, not to do so, as I was already under bond, and, if Martin was killed, it would go go hard with me.' It had previously been proved, that Price had fled; and that defendant had been arrested at Martin's instance, and bound over on a charge of stealing Martin's money. The defendant then proposed to prove, by the sister of said Price, that he did send said message to Price by her, when she told him what Price had said; but the court refused to allow him to make said proof, and defendant excepted."

WILLIAM COOPER, for the prisoner.

M. A. BALDWIN, Attorney-General, *contra.*

Chaney v. The State.

RICE, C. J.—As this prosecution was commenced before the Code went into effect, the questions presented must be determined, not by its provisions, but by the law which was of force when the indictment was found. Hiscox v. Hendree, 27 Ala. R. 216; Doe, *ex dem.* Kennedy v. Reynolds, *ib.* 364; Frankenheimer v. Slocum, 24 *ib.* 373; Code, §§ 12, 14.

2. By that law, a person indicted (as in this case) for an offense which may be punished capitally, if in actual confinement, was entitled to have delivered to him, two entire days before his trial, not a list of the *regular juries* for the week or term, but a list of the jurors specially "summoned for his trial." The regular juries were summoned for the trial of causes indiscriminately; not for his trial, nor for any other particular trial. *In addition to them,* the court was required to cause the sheriff to summon "for his trial" such number of other persons as, with the regular juries, would amount to not less than fifty, nor more than one hundred. From the additional jurors thus summoned, and the regular juries, the jury to try him was to be drawn in the mode pointed out in the statute. But it was only as to *the additional jurors* specially "summoned for his trial," that the right to a list was given.—Clay's Digest, 459, §§ 53, 54. And it was because that right was impaired and assailed by the action of the court in the case of Parsons v. The State, 22 Ala. Rep. 50, that the judgment therein rendered by the court below was reversed.

But, in the present case, that right has not been assailed or impaired by the action of the court. Here the requisitions of the statute have been complied with. The defendant was duly furnished with a list of all *the additional jurors*—the jurors summoned for his trial. All of them were summoned, and seem to have been in attendance. His complaint is as to one or two *regular jurors*, and rests upon the assumption, that he had *a right* to a list of them. He had no such right. If he obtained a list of them, that cannot *create* for him a right which the law did not confer. Our conclusion is, that the court did not err in its rulings

as to the motion to quash the *venire*, and as to the objection to proceeding with the trial.

3. On the trial, the defendant offered to prove, by the sister of Christopher Price, that when she told the defendant that said Christopher Price had said he would kill Martin, the defendant sent said Christopher word, by his sister, not to do so, as he (defendant) was already under bond, and if Martin was killed, it would go hard with him, (defendant). It had been previously proved, that Price had fled; and that defendant had been arrested, at Martin's instance, and bound over on a charge of stealing Martin's money. But it does not appear *at what time* the sister of Price told the defendant that her brother Christopher had said he would kill Martin; nor *at what time* her brother sent by her the word to him; nor what evidence the State had adduced against the defendant; nor *at what time* Martin was killed. The only date given in the bill of exceptions, is the date of the conversation between the witness Whitsett and the defendant, which was called out by the defendant himself.

It is a general rule, that a party cannot make evidence for himself, either by his acts or declarations. To this rule there are exceptions. Here, it is said, the declaration is a fact. But, in the language of Chief-Justice Parker, we answer, "the fact is also a declaration." Conceding it to be true, "that, at the time of making the declaration, it probably had no reference to any controversy; yet, if it be admitted that such declarations are good evidence, we shall soon find cases of declarations and assertions of a fact as having happened, with a view *to support what may be afterwards done*, when it is too late to have its effect, and when it may become necessary to antedate, if we may use the expression, the fact in controversy."—Carter v. Gregory, 8 Pick. R. 165; State v. Scott, 1 Hawks, 24; Towle v. Stevenson, 1 Johns. Cases, 110; Jones v. Huggins, 1 Dev. 223; Perrie v. Williams, 5 Mart. Rep. N. S. 694; Ligon v. Orleans Nav. Co., 7 *ib.* 682; Watson v. Osborn, 8 Conn. R. 363; Parker v. Goldsmith, 16 Ala. R. 526; Reynolds v. Tompkies, 17 Ala. R. 109;

Martin v. Williams, 18 *ib*. 190; Mahone v. Reeves, 11 *ib*. 345; McLean v. The State, 16 Ala. R. 672.

But, conceding that the sending word by the defendant to Christopher Price, as offered to be proved, was an act, and not a declaration; yet it was an act of the defendant offered *as evidence for himself*. It was an equivocal act. The time when it was done does not appear; and, to make it admissible *for him*, it was essential that it should appear that it occurred within the period covered by the criminating evidence, or that it *tended* in some way to explain some fact or circumstance introduced by the State, or to impair or destroy the force of some evidence for the State; "for, otherwise, the prisoner would be at liberty to take the whole range of his life, in the course of which his character and his designs may have undergone a complete change."—1 Phil. on Ev. (edition of 1849,) 479, 480; Roscoe's Cr. Ev. 89; McLean v. The State, and other cases, *supra*; Oliver v. The State, 17 Ala. R. 582.

The evidence as offered by the defendant, was not admissible under any general rule. If admissible at all, it could only be so upon some exception, or under certain circumstances. It is not shown to be within any exception, and no circumstances appear which would have made it admissible. We can make no intendment in favor of the party excepting; but must make all reasonable intendments in favor of the ruling of the court below. No error is shown in any of its rulings, and we must, therefore, affirm its judgment, and direct its sentence to be carried into execution.