## R. Shrivers *v.* The State.

1. Evidence. — In a trial for murder, the State having been allowed, without objection, to prove what the defendant, after his arrest, and uncautioned, said respecting his possession of the deceased's pistol, the defendant should have been permitted to prove any fact or circumstance, or any declaration made by himself at the time or immediately afterwards, tending to explain, impair, or destroy the evidence thus adduced by the State. To render his own declarations competent, however, it must appear that they come within the exceptions to the rule that a party cannot make evidence for himself.

2. Confessions. — Statements of an uncautioned prisoner cannot be made evidence against him by proving that they were repeated in his presence, while he was still in custody, and that he made no reply.

3. CHARGE ON MURDER in the second degree is erroneous if it permits the
   jury to convict of murder in the second degree without finding that the
   killing was on implied malice.

4. MANSLAUGHTER. — Note evidence in a trial for murder making a charge on
   manslaughter requisite.

APPEAL from the District Court of Cherokee. Tried be-
low before the Hon. P. F. EDWARDS.

There was no controversy that Alexander Mills, the de-
ceased, came to his death in Cherokee County, July 3, 1879,
by means of three stabs with a pocket-knife, inflicted by
Robert Shrivers, the appellant, who was a " cropper on
shares" on land of the deceased.

The encounter and homicide occurred late in the evening,
and at the premises of Green Mills, a brother of the de-
ceased, and about a mile from the home of the latter. The
difficulty originated in the use by the defendant of a buggy
and mule belonging to the deceased. On the day of the
homicide, the defendant drove the mule and buggy a dis-
tance of ten miles, and on his return stopped at the house
of Green Mills, and hitched the mule and buggy to the
fence some twenty feet in front of the gallery.

Green Mills, testifying for the State, testified that he,
being in his field, saw the defendant as the latter passed
with the mule and buggy towards witness's house. Soon
afterwards the deceased came along on foot, and asked if
witness had seen any thing of his mule and buggy; and on
learning from witness that the defendant had just passed
with it, he went on towards witness's house. This was
after sunset, and defendant stopped his ploughing and started
home. When he reached his lot gate, about thirty steps
from where the killing took place, he heard loud talking,
and saw the defendant walking down towards where the de-
ceased was, about the rear of the buggy, and then get over
the plank fence. Witness next observed that the deceased
had his left hand in the defendant's collar, and his right

hand down by his side.  Defendant had his left hand and
arm around the deceased's neck, and his head lying on
the deceased's shoulder, and was striking the deceased
with his right fist, saying repeatedly, "Don't show your
pistol!"  Defendant threw his left foot in front of the de-
ceased and tripped him up, the latter falling on his knees,
with his left hand on the ground and his right employed in
warding off the defendant's blows.  Defendant got astride
and on the back of the deceased, and, reaching around the
latter's shoulder, stabbed him three times in the breast
with a knife.  Witness twice pulled the defendant off the
deceased, but he jerked away, and continued to strike the
deceased.  Witness and W. Arnwine finally pulled the de-
fendant off the deceased, and the latter rose, walked away,
and staggered to the gate, where his wife was, and she and
witness helped him to the house and laid him down on the
gallery, where he died in about five minutes.  While he
was staggering towards the gate, the defendant attempted
to follow him, but was prevented by Arnwine, who got be-
tween him and the gate.

Mrs. R. Pearce, for the State, testified that when the de-
ceased came up to the fence where the mule and buggy
were hitched, she, W. Arnwine, Mrs. Green Mills, and the
defendant were sitting on the gallery.  The deceased com-
menced to untie the mule, and seemed angry and excited.
Defendant rose up from his seat and called to the deceased
to know what he was going to do with that mule and buggy,
asking him at the same time, "Didn't you let me have that
mule and buggy to go to Jacksonville to-day?"  To which
the deceased replied, "No, I did not; I let you have the
mule to plough the cotton."  The defendant then said, "I
want that mule and buggy to go to Troupe to-night to a
party;" and the deceased replied, "I want the mule and
buggy to take my wife and child home."  Defendant then
went out to the fence, and, after some further exchange of
words, got over the fence to the outside, near where the

deceased was standing. After some further angry words between them, the deceased advanced and caught the defendant in the collar with his left hand, throwing his right hand to his side and under his coat. Defendant said, "Alex, I'm not afraid of you; don't draw your pistol." Defendant was giving back and the deceased advancing, when the defendant put his arm around the deceased's neck, with his head over the latter's shoulder; and about that time the witness called out from the gallery, "Don't shoot." The further testimony of this witness concurred substantially with that already stated, and other witnesses for the State and for the defence narrated the encounter and its incidents to the same effect. No pistol or other weapon was shown by the deceased, or found upon him after the difficulty. Two witnesses for the defence said he bore the character of a violent and dangerous man.

B. F. Chandler, sheriff of the county, testified, for the State, that on Saturday succeeding the Thursday of the homicide he saw the defendant in Troupe, a short time after Mr. Holcomb, one of witness's deputies, had arrested him. In the defendant's presence, witness received a pistol from Holcomb, which the latter then said had been found on the defendant's person when he was arrested, from thirty to sixty minutes previous; and which pistol, being the deceased's, was to be returned to Mrs. Mills, the widow of the deceased. The defendant said nothing in denial of what Holcomb told witness. It was in proof that the defendant, a few minutes after the killing, went in the direction of the deceased's, and was not seen again by any witness until after his arrest.

With reference to the pistol, Mrs. Mills, the widow of the deceased, in her testimony for the State, said that it was lying on the mantel-piece at her home when she last saw it previous to its return to her by the sheriff. She had come to Green Mills's the day before the homicide, and the pistol was on the mantel-piece when she left home.

In rebuttal of Chandler's testimony, the defence proposed to prove by Rial Smith that the defendant, within an hour after his arrest, and after Holcomb's statement to Chandler, told when and where he got the pistol, and that he got it after the killing. This was excluded on objection by the prosecution ·that the defendant's declaration was not evidence in his behalf; and the defence reserved exceptions.

The appellant was found guilty of murder in the second degree, and his punishment was assessed at thirty-seven years in the penitentiary.

*R. H. Guinn* and *S. B. Barron*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

White, P. J. · The evidence of the witness Chandler, as to what his deputy Holcomb, in presence of defendant, said the prisoner told him when the pistol was delivered up, was in the nature of hearsay evidence, and was not admissible if it had been objected to by the defendant. Because when the statements were made by Holcomb, the defendant, though present, was under arrest, and his condition as a prisoner protected him from such declarations or admissions, even if they had been made by himself; and when made by Holcomb in his presence, he was not bound to deny them in order to avail himself of this legal protection, and avoid the force of the statements as *quasi*-confessions. His presence did not affect the *status* of the evidence. It must be treated as though he was not present at the time, and therefore as hearsay.

Having been admitted, however, at the instance of the State as a criminative circumstance, without objection from defendant, the defendant was entitled to show any fact, circumstance, or declaration made by him at the time, or immediately afterwards, tending to explain, impair, or destroy the force of this evidence for the State. *Davis* v.

*The State*, 3 Texas Ct. App. 91; *Chaney* v. *The State*, 31 Ala. 342.

To render such after-declarations or statements admissible as explanations, it must appear that they were made recently after the former; and it must also be obvious from the circumstances that they are not obnoxious to, but come within the exceptions to, the general rule that a party cannot make evidence for himself, either by his acts or his declarations. We think the matter in this instance did come within the exception, because the explanation was made within a short time, to wit, within an hour, and was both reasonable, probable, and entirely consistent with the former statement. The court, therefore, after admitting this evidence, erred in ruling that the testimony of Rial Smith was inadmissible, as shown by the bill of exceptions.

But, as above stated, the evidence of Chandler was hearsay, and was further inadmissible if sought to be used as tantamount to a confession of defendant. If Holcomb himself had been upon the stand, he should only have been permitted to testify that he took the pistol from defendant, and not what defendant might have said; because the defendant at the time was under arrest, and it does not appear that he had been warned that any thing he said would be used as evidence against him. In other words, his declaration did not come within the rules of confession. Code Cr. Proc., art. 750.

The charge of the court to the jury is complained of, and we select the following paragraph as declaring a proposition which is incorrect in law: "Or if you are satisfied from the evidence, beyond a reasonable doubt, that the defendant, Robert Shrivers, did in Cherokee County, at any time before the filing of the indictment, to wit, the 24th day of October, 1879, unlawfully kill Alexander Mills, without excuse or justification, by intentionally cutting and stabbing him, and you have a reasonable doubt whether said killing was done with express malice, you will find him guilty of

murder in the second degree." To have made such a killing murder in the second degree, it would have been necessary for the jury to have believed that the killing was also done with implied malice. As the proposition is stated by the court, the offence would not have been murder in the second degree, but is more nearly akin to manslaughter; which, under our law, is "voluntary homicide committed under the immediate influence of sudden passion arising from an adequate cause, but neither justified nor excused by law." Rev. Penal Code, art. 593. Without the essential ingredient of implied malice, it was error to instruct the jury to find defendant guilty of murder in the second degree.

Another error, as we believe, committed by the court, was in failing to give the defendant the benefit of a charge upon the law of manslaughter. It is true that "insulting words or gestures, or an assault and battery so slight as to show no intention to inflict pain or injury, * * * are not adequate causes" sufficient to reduce a homicide from murder to manslaughter. Rev. Penal Code, art. 596. But it is to be remembered, in this case, that though it afterwards was ascertained that deceased really had no weapon upon him at the time he assaulted defendant and took him by the collar, yet, from his movements, parties looking on thought he was trying to draw a weapon; and defendant evidently thought so too, for the brother of deceased, and other witnesses, heard him tell deceased "not to show" or "draw" his pistol.

Under such circumstances, the law of manslaughter should have been submitted to the jury.

It is unnecessary to notice or discuss the other errors complained of, as they are not likely to arise on another trial. For the errors above pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*