## LEE SIMMONS v. THE STATE.

### *No. 61. Decided November 2.*

1. **Murder — Evidence — Motive and Intent of Defendant.** — On a trial for murder, where it appeared from the testimony that deceased, armed with a gun, was hunting and inquiring for defendant, threatening to kill him on sight, on account of insulting conduct toward deceased's step-daughter, *held*, that these acts, conduct, and threats of deceased, having been communicated to defendant and his friends and relatives, it was competent and admissible for him to prove that in a consultation with his friends and relatives they advised him to arm himself, and go to where deceased was and try to convince him that he had not insulted his step-daughter, such evidence tending to show that the motive and intent of defendant in seeking deceased was for purposes of reconciliation, and not to provoke a difficulty with intent to kill him.

2. **Same — Acts of Defendant Prior to Homicide.** — On a trial for murder, where the evidence showed that defendant started unarmed to go and have an interview with deceased, with the purpose of endeavoring to explain matters and reconcile him, *held*, that it was admissible for defendant to show that his brother told him that deceased was armed with a pistol, and advised him to go back and get his gun, such evidence being admissible to show that when he started his intent and purpose was not to kill deceased, but that the gun was only taken as a means of protection.

3. **Charge of Court—Conflicting Special Instructions.**—Where the court, in the general charge, erroneously made the right of defendant to go to deceased in a lawful, orderly, and respectful manner for purposes of explanation, depend upon defendant's innocence of the charge made by deceased against him, *held*, that such error was not cured by giving correct special instructions upon the subject, the general charge remaining unchanged; but the charges being in direct conflict, were not only calculated to confuse, but the jury may have been governed by that portion of the general charge which was erroneous.

APPEAL from the District Court of Hunt. Tried below before Hon. E. W. TERHUNE.

Appellant was tried upon an indictment charging him with the murder of one M. H. Williamson, in Hunt County, Texas, on the 25th day of October, 1890.

At the trial he was convicted of murder in the second degree, with a punishment affixed at five years imprisonment in the penitentiary. All the essential facts in the case are sufficiently stated in the opinion of the court.

*Perkins, Gilbert & Perkins, Mason & Huffar,* and *Yoakum & Looney,* for appellant.—The court erred in refusing to permit appellant to prove that when he was first informed that deceased was threatening to kill him, and charging that he had insulted Delia Evans, the step-daughter of deceased, that he (appellant) told his father, Thomas W. Simmons, and his father-in-law, Robert McCorkle, that he had not seen Delia Evans that day, and had not insulted her.

Where an accused party is first informed that there is a charge against him of having committed a criminal act or done a moral wrong, his declaration made at the time is admissible in evidence.

Where an accused person is on trial for murder, and the testimony shows that the deceased party had threatened to take the life of the accused on account of certain misconduct of the accused, and that such threats, and the reason for making the same, were communicated to the accused for the first time, his declarations with respect thereto are admissible as evidence. Taylor's case, 15 Texas Ct. App., 356; Brumley's case, 21 Texas Ct. App., 238; 1 Phil. on Ev., Cowan & Hill's Notes, 3 ed., 1859, 181, 51, 81; 1 Greenl., 144; Wat. U. S. Crim. Dig., 137; Chaney's case, 31 Ala., 342; Birdsong's case, 47 Ala., 65.

The court erred in refusing to permit appellant to prove, that while he was at his house and in conversation with his relatives, at the time when they saw deceased go to the gin, that his mother-in-law, Mrs. Malissa McCorkle, upon seeing deceased at the gin, advised him (appellant) to go to the gin and tell deceased that he had been to the Graveyard Prairie, and had not seen Delia Evans and had not insulted her, and that his father-in-law and step-brother and other relatives had all approved of this course.

In the case of a homicide, where it is shown by the State's testimony that the accused went to the place of the killing, where the deceased then was, it is competent for the accused to prove. in explanation of his act of going to such place, that he was advised to go there for the purpose of settling the difficulty.

Where an act of a person accused of a crime has been shown by the testimony of the State as a circumstance indicating his guilt, he is entitled to explain said act by proving declarations of himself or advice of his friends, or advice given him by any third party.

The court qualifies the bills of exceptions by stating that he permitted the appellant to prove the object with which he went to where deceased was at the time of the difficulty, and ruled out the conversation; but we submit that the verbal explanations of an act are always admissible under such circumstances, and are much more satisfactory to the minds of the jury than a simple statement of the object of the act. Code Crim. Proc., art. 751. Same authorities as above, and Boothe's case, 4 Texas Ct. App., 209; 1 Greenl., 146, 147; The People v. Williams, 3 Park. Crim. Rep., 84.

The court erred in refusing to permit appellant to prove that at the time he started to go to the gin, where deceased was, he started without his gun and turned back and got it, and that the reason he turned back was because his step-brother, Jimmie Darnell, told him he had better take his gun, and that he (Darnell) was satisfied that deceased had a pistol.

When the testimony of the State shows some act of the accused party

which is relied on as an indication of guilt, it is admissible for accused to prove that he did the act upon the advice of other persons.

Where the State has proved that one accused of murder has armed himself and gone to the scene of the conflict, it is admissible for the accused to prove that he was advised so to do by his friends and relatives, as the same is explanatory of such criminative fact.

The court erred in his general charge to the jury in charging them as follows: "If the jury find from the evidence that M. H. Williamson made serious threats to take the life of defendant, and that defendant heard of such threats, then the defendant would have had the right to arm himself so as to be prepared to defend himself against the attempted execution of such threats; and if you further find that Williamson made these threats on account of information he had received charging defendant with having insulted his step-daughter, and that defendant did not in fact offer such insult, then he would have had the lawful right to approach Williamson in a lawful, orderly, and respectful manner for the purpose of refuting such charges and of reconciling Williamson by showing its falsity. But he would not have had the right to approach Williamson with the apparent intention of provoking a difficulty with him, such as would likely result in some injury to either party."

And by repeating the substance of the same charge in the supplemental charge given by the court, after reading the general charge, and by then giving to the jury, without any explanations of the change in his general charge, the following special charge requested by the defendant, to-wit: "Gentlemen of the jury, if you believe from the evidence that the deceased threatened the life of the defendant, and that these threats had been communicated to the defendant, he would have had the right to go to the deceased with a view of peacefully and amicably adjusting their differences, if any; and this would be true, even though the defendant was guilty of the conduct that deceased charged against him." It being error for the court to so charge the jury:

1. Because the propositions of law contained in the said general and supplemental charges are not correct.

2. Because said charges are inconsistent with the special charge given at the instance of the defendant, and the court in no manner attempted to explain the inconsistencies.

3. Because the court did not change his general and supplementary charges to conform to the law as stated in the special charge, so given at the instance of defendant.

4. Because the giving of said charges without alterations or explanations was calculated to confuse the jury.

Where a person has done an immoral act that is not a crime, this act does not deprive such person of a perfect right of self-defense, or of any other right of a citizen of the State.

Where the charge of the court is erroneous, and a special charge is requested, that states the law correctly, and the general charge is excepted to, the giving of the special charge without correcting the general charge does not cure the error committed by the court, because the jury would be more liable to find in accordance with the general charge than in accordance with the special charge asked by defendant, and because the whole of the two charges taken together nullify each other, so that there is in effect no charge given to the jury on the question. Wat. U. S. Crim. Dig., 624; Bradley v. The State, 31 Ind., 492; Kingen v. The State, 45 Ind., 519; 11 Am. and Eng. Encyc. of Law, 249.

*R. H. Harrison*, Assistant Attorney-General, for the State.

HURT, Presiding Judge.—This appeal is from a conviction of murder in the second degree. The evidence shows that Williamson, the deceased, had gone to Simmons' gin on two occasions on the day of the homicide, inquiring for appellant, threatening to kill him on sight, and charging him with having insulted Delia Evans, who was deceased's step-daughter. On both occasions the deceased was armed with a gun. After the second visit of deceased to the gin, Robert McCorkle and his wife, defendant's wife, and defendant's father, all being advised of the charges, threats, acts, and conduct of deceased, were at the house of defendant, which was about seventy-five yards from the gin. Defendant had ·just returned home. All the parties at the house advised appellant to arm himself. They talked about what was best to do, and while they were talking the deceased rode up to the gin, with a turn of corn on his horse. This was his third visit to the gin that evening. On this occasion he had no gun. He got off his horse, took off the sack of corn, and sat down near the mill house. Appellant and McCorkle and his step-brother, Darnell, started over to the gin to talk to deceased, and see if they could not compromise the matter by telling deceased where appellant had been during the day. Appellant started without his gun, but turned back and got it. Appellant and Darnell stopped at the gin lot gate, and McCorkle went to where the deceased was, and told deceased that he had seen appellant, and that he had not seen Delia Evans that day. Deceased replied that appellant need not deny it. After some further conversation, McCorkle returned to the gate, and told appellant that deceased said "he need not lie to try and get out of it; that he had done what the girl said." Defendant said, "I will go and see him myself," and went to the lot where deceased was. At the time deceased and Robert McCorkle walked out from the gin to talk together, Turner Ursery followed them out, and overheard the conversation between them, and saw McCorkle go to the gate where appellant was.

Ursery testified to the facts immediately connected with the homicide,

in substance, as follows: After McCorkle left deceased, Ursery remained standing by the bale of cotton where deceased was, and said to him (deceased), "Hud, it would be better to settle this without a fuss, if you can settle it by law." Deceased replied, "I ain't got any money to go to law." Ursery said, "Carry it to the law; that will be better than to have a fight over it." Deceased replied, "God damn him, I will kill him, if they send me to hell in a minute." About that time deceased said, "Go back from here; go back from here," and motioned his hand in a southerly direction. Ursery straightened up from the bale of cotton on which he was leaning, and saw appellant standing there with his gun, he having walked up from the gin lot gate, where he had left McCorkle. He was holding his gun in his right hand, and was about twelve feet from deceased. Deceased came around the bale of cotton, like he was going to appellant, and when he got in front of the muzzle of the gun, Ursery stepped forward and turned the gun around with his right hand, and deceased sprang forward and caught the muzzle of the gun with his left hand. Deceased and appellant jerked the gun backwards and forwards a few minutes, and then appellant caught the gun barrel with his right hand and turned it to deceased's breast. Then Ursery grabbed the gun with his right hand and shoved it back with his left hand. This threw the parties some few feet apart, and then appellant said, "I haven't seen your girl to-day." Deceased replied, "You are a damned liar," and started towards appellant. Deceased had a knife in his right hand. Appellant said, "Don't come on me." Deceased kept coming on towards appellant, and got within about six feet of him, and had his knife in a position to strike. He had his left hand shut up, holding it in front of his breast. Ursery sprang forward between them, and said, "Let us not have any of this, boys." Deceased then drew up his right hand in a position to strike, and appellant pushed his gun under the arms of Ursery and fired. At the time the gun fired, deceased had his right hand up a little over his head, grasping the knife in it by the handle, with the blade sticking out from the lower side of the hand, and pointing forward. Ursery was between them, but did not have time to strike the gun before it fired, for he says, "When I sprang forward and threw up my arms, defendant 'jobbed' under them and fired." Deceased staggered back two or three steps, and moved backwards and forwards a time or two, and died in a short time. Appellant's gun was a short single barreled shotgun. This statement will be sufficient to enable us to properly appreciate the importance of the questions presented that we deem necessary to discuss in disposing of the case.

Counsel for appellant contends that the court erred in refusing to permit appellant to prove that while he was in his house, and in conversation with relatives, at the time when they saw deceased go to the gin, his mother-in-law, Mrs. Malissa McCorkle, upon seeing deceased at the gin,

advised him (appellant) to go to the gin and tell deceased that he had been to the Graveyard Prairie, and had not seen Delia Evans, and had not insulted her, and that his father-in-law and step-brother and other relatives all approved of this course.

A bill of exceptions shows the following: The defendant called Thomas W. Simmons as a witness, and after proving by him that deceased had threatened to kill defendant, and that he went to defendant's house and told defendant about it, and that McCorkle and his wife and defendant's wife all came to defendant's house, and all talked the matter over; that the defendant then offered to prove by McCorkle that Mrs. Malissa McCorkle said that defendant ought to go down to the gin and tell Mr. Williamson that he had been to the Graveyard Prairie, and had not seen Delia Evans, and had not insulted her, and that Robert McCorkle said that was what they ought to do, and that they would go with defendant and try to compromise and settle the matter with Williamson; and that Darnell said, "Yes," he would go with him; that they surely could get Williamson to listen to reason. That defendant's wife expressed approval of this course, and so did defendant's father, and that thereupon McCorkle said, "Let's go." The State objected to this testimony, because immaterial, irrelevant, and hearsay, and the court sustained the objection. The bill of exceptions is approved, with the following explanation by the trial court: "I permitted all the witnesses to testify that defendant and others went to the gin for the purpose of reconciling Williamson, and explaining the matter to him, and, if possible, compromising with him, and only excluded the particular details of the conference held by defendant and his friends at home. I did not exclude the object and purpose of the visit, but did exclude the hearsay details of the conference at home."

We are of opinion that the proposed facts were admissible. That appellant was advised by others to go to the deceased and explain the matter was strongly calculated to corroborate the other witnesses as to the purpose of defendant in going to the deceased. As a criminative fact, the State found that appellant went to where deceased was, being armed with a gun. What was the state of his mind? For what purpose did he go? Was it a friendly mission, or was it for the purpose of killing deceased? The State's theory was that defendant went with malice in his heart; went to kill. Appellant contends that his mission was for a settlement, to prevent trouble with the deceased. At his house, about seventy-five yards from the gin, there was a consultation of his friends. They advised him to go and try to convince deceased that he (appellant) had not made an assault upon the young lady. Was this advice, under the circumstances, admissible evidence? "Upon an inquiry as to the state of mind, sentiment, or disposition of a person at a particular period, his declarations and conversations are admissible. They are parts of the res gestæ." 1 Greenl. Ev., 3 ed., 132; Chaney v. The State, 31 Ala., 342.

The State proved that appellant went armed to where deceased was. This fact was relied upon for the purpose of showing, in connection with other circumstances, that appellant intended to kill deceased. When appellant started to go to where deceased was, he started without his gun, and went back and got it. He proposed to prove, in explaining his conduct, that his step-brother, Darnell, told him that he had better take his gun; that he (Darnell) was satisfied deceased had a pistol. Upon objection by the State, these facts were rejected, and appellant reserved his bill. The proposed facts were clearly competent evidence, whether Darnell knew deceased had a gun or not, if he induced appellant to believe that deceased was armed with a pistol. When viewed in the light of the oft-repeated threats made by deceased, it was simply an act of prudence for appellant to arm himself.

In the course of the general charge the jury were informed, that " if the jury find from the evidence that Williamson made serious threats to take the life of defendant, and that defendant heard of such threats, then the defendant would have the right to arm himself, so as to be prepared to defend himself against the attempted execution of such threats; and if you further find that Williamson made the threats on account of information received, charging defendant with having insulted his step-daughter, and that defendant in fact did not offer such insult, then he would have had the lawful right to approach Williamson in a lawful, orderly, and respectful manner, for the purpose of refuting such charge, and of reconciling Williamson by showing its falsity. But he would not have the right to approach Williamson with the apparent intention of provoking a difficulty with him, such as would likely result in some injury to either party." Bearing upon the same subject, the trial court gave the following special charge, at the request of appellant: "If you believe from the evidence that the deceased threatened the life of the defendant, and that these threats had been communicated to the defendant, he would have the right to go to the deceased with a view of peaceably and amicably adjusting their differences, if any; and this would be true, even though the defendant was guilty of the conduct that deceased charged against him."

The instructions we have quoted from the general charge were repeated in a supplemental charge. It is insisted by counsel for appellant that the instructions contained in the general and supplemental charges are incorrect, because the right of the defendant to go to deceased in a lawful, orderly, and respectful manner for the purpose of explaining and satisfying him, is made to depend upon defendant's innocence of the charge which deceased had made; that is, that he had not so insulted Delia Evans.

It is also insisted that, although correct instructions were given in the charge requested by defendant upon this subject, the main charge was

not changed or otherwise explained, and was calculated to confuse the jury.    Whether appellant was guilty or not of insulting the lady, he had the right to make an effort to amicably adjust the matter, though in doing so he should be guilty of lying.    The charges on this subject are in direct conflict, and were calculated not only to confuse the jury, but the jury may have been governed by that portion which was erroneous.    The objectionable charge was excepted to at the time.    Bradley v. The State, 31 Ind., 492; Kingen v. The State, 45 Ind., 519; 2 Amer. and Eng. Encyc. of Law, 249.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.