## HERMAN OTTO v. THE STATE.

### No. 2736.     Decided April 20, 1904.

**Charge of the Court—Delirium Tremens.**

Where the evidence tends to show that defendant was laboring under delirium tremens at the time of the homicide, superinduced by long continued dissipation, and was the user of narcotics of different character, which medical experts testified did produce delirium tremens, and that on account of this malady he did not know the difference between right and wrong at the time of the homicide, the court should have charged on this phase of the case, and a charge on intoxication produced by the recent use of ardent spirits was insufficient.

Appeal from the District Court of Jefferson. Tried below before Hon. A. T. Watts.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The State's testimony shows that defendant, the deceased, Frank Obst, and one Mattis lived together in a boat house, which was owned

by the defendant. That on the evening of the night of the killing he and Mattis had a difficulty. Defendant accused Mattis of stealing his money, which consisted of twenty dollar bills, and amounted to about $1000, and which he usually had in a leather purse next to his skin, suspended from the neck. Mattis denied taking his money, and had been perfectly friendly with defendant, as was also deceased. Obst and other parties prevailed on defendant to desist from his abuse of and attacks on Mattis and to lie down. No one seemed to have taken defendant's accusations against Mattis and Obst that they had stolen his money seriously, and the deceased remarked that defendant had one of his spells. Mattis then left to go to his work, leaving defendant and deceased on the gallery of the boat house, seemingly quiet and at peace; Mattis not returning to the boat house until next morning after the homicide, which occurred at about 8 o'clock of the night before.

The homicide occurred in the boat house and was evidently committed by defendant with a hammer, with which he beat deceased on the head and breast. Witnesses were attracted by a scuffle and rumbling noise in the boat house, and when they reached it the door was shut and a struggle then went on inside, and one of the parties engaged hollowed: "Oh; Oh!" and again one of them was heard to say; "Now, God damn you, I'll fix you!" They were fighting, and witness could hear a dull sound as though some one was striking another with a dull instrument such as a hammer. The above language was uttered about the time the boat house was shut, and was spoken in good, clear English. Deceased spoke good clear English. Witnesses called for the officers, who in fifteen or twenty minutes came upon the scene, forced the door, found deceased dead upon the floor in a pool of blood, and arrested defendant, who was the only person in the house except the deceased at the time of the homicide.

The defendant admitted on the stand that he had killed the deceased with a hammer, which was found in the house, in self-defense; that deceased had made an attack upon him with a knife; that Mattis and deceased had stolen his money, and deceased had threatened to kill him; that Mattis had pushed him from a plank near the boat house into the water, etc. Defendant's testimony and that of other witnessess also showed that he was not only addicted to strong drink habitually for many years, but that he drank concoctions of alcohol and ether and other narcotic substances; that he suffered at times from delirium tremens, was nervous, erratic and acted strangely at times, and was called the "Crazy Dutchman," and was in a drunken, delirious condition at the time of the homicide. It was also shown that it was not true that Mattis had pushed defendant into the water, but that he tried to walk the plank and fell in, yet that before the homicide occurred he asserted before different people that Mattis had thrown him into the water. It was also shown that he accused both Mattis and the deceased of stealing his money and that neither seemed to take the charge seriously; $500 of defendant's money was found stuck away in the boat house after the

homicide.   Defendant related the details of the struggle between him and deceased very minutely.   Experts on insanity were introduced by the defendant's counsel, and testified that there was a marked difference between temporary insanity produced by the recent and immediate use of intoxicants and permanent insanity or insane delusions brought on by the constant immoderate use of liquor and narcotics and resulting in delirium tremens; and that it was possible, or probable, for a person thus suffering from insane delusions to have acted as defendant did and to be irresponsible for his acts and incapable of distinguishing between right and wrong.

Defendant's counsel among other requested instructions presented special charges in various forms, as applicable to the testimony in the case, submitting for the guidance of the jury the law of insanity known as insane delusions growing out of delirium tremens, in which they drew the distinction between temporary insanity superinduced by the recent, immoderate use of ardent spirits, and permanent or settled insanity brought about by long continued chronic drunkenness and the habitual use of other narcotics; which instructions the court refused and to which ruling of the court defendant's counsel duly reserved their exceptions. The court in his main charge submitted the law of general insanity and that produced by the recent use of ardent spirits.

*Howth & Adams,* for appellant.—No harm would have been done the State if the court had instructed the jury, as it was requested to do, on delirium tremens, by distinguishing it in the charge from temporary insanity, and drawing clearly the line of distinction between the "settled" condition which does and the "temporary" condition which does not excuse.   Defendant was entitled to have the distinction drawn as a matter of law, since it was raised by the evidence, and the failure to do so is error, for which the cause ought to be reversed and remanded. Erwin v. State, 10 Texas Crim. App., 700; Ward v. State, 19 Texas Crim. App., 664; Kelly v. State, 20 S. W. Rep., 357; Stokes v. State, 70 S. W. Rep., 95; Harris v. State, 18 Texas Crim. App, 287; Edwards v. State, 43 S. W. Rep., 112; Cannon v. State, 56 S. W. Rep., 351; Merritt v. State, 40 Texas Crim. Rep., 359; Merritt v. State, 45 S. W. Rep., 21, 50 S. W. Rep., 384.

*Howard Martin,* Assistant Attorney-General, for the State.—On question of insanity:   Boren v. State, 32 Texas Crim. Rep., 637.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty-five years.

The evidence tends to show that defendant was laboring under delirium tremens at the time of the homicide, superinduced by long continued dissipation, and was the user of narcotics of different character, which the medical experts testified did produce delirium tremens; and at the time of the homicide was laboring under said malady to such an

extent that he did not know the nature and quality of the act, and did not know the difference between right and wrong. The court applied the law applicable to intoxication produced by the recent use of ardent spirits, but did not charge on above phase of the law. We think the evidence clearly raised the same, and the court should have so charged. Erwin v. State, 10 Texas Crim. App., 700; Ward v. State, 19 Texas Crim. App., 664; Kelly v. State, 20 S. W. Rep., 357; Edwards v. State, 43 S. W. Rep., 112; Cannon v. State, 56 S. W. Rep., 351; Merritt v. State, 40 Texas Crim. Rep., 359. If defendant was crazy, superinduced as stated above, by other agencies than intoxication, this is a distinct defense, and it is the duty of the court to charge on said issue where raised by the evidence. We do not deem it necessary to collate all the evidence raising this issue. It clearly appears, whether true or not, that appellant's testimony raises the same; and the jury being the judges of the evidence, it is the duty of the court to charge thereon. Failing to do so is error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*