### JAMES ROBINSON v. THE STATE.

No. 4695. Decided November 14, 1917.

Rehearing denied January 16, 1918.

**1.—Burglary—Private Residence—Rule Stated—Pleading.**

Where the indictment alleged both a night-time and a day-time burglary, and defendant was convicted of a night-time burglary of a private residence, there was no error on account of the pleading. Following Martinez v. State, 51 Texas Crim. Rep., 584, and other cases.

**2.—Same—Indictment—Burglary—Private Residence.**

Where, upon trial of burglary of a private residence in the night-time, the indictment followed approved precedent, there was no error in overruling the motion in arrest of judgment.

**3.—Same—Declarations of Defendant—Bill of Exceptions.**

Where, upon trial of burglary of a private residence in the night-time, the State introduced the written confessions of the defendant, which were voluntary, and complied with the statutes, there was no reversible error.

**4.—Same—Evidence—Breaking—Harmless Error.**

Where, upon trial of burglary of a private residence in the night-time, there was some question whether the door of the alleged house was left open, there was no error in permitting the State to show by the owner of said house that it was his habit to shut the door before retiring each night; besides, defendant admitted that he pushed the door open and got the alleged property, so that if the rule was relaxed, the error, if any, was harmless.

**5.—Same—Argument of Counsel—Agreement of Counsel.**

Where, upon trial of burglary of a private residence in the night-time, the attorneys for both parties entered into an oral agreement as to certain facts, about which counsel disagreed in the argument, there was no error in leaving the matter to the jury, besides the bill of exceptions was defective.

**6.—Same—Evidence—Charge of Court.**

In the absence of a bill of exceptions to the charge of the court at the time, and in the absence of a special requested charge, the matter can not be considered on appeal.

**7.—Same—Evidence—Bill of Exceptions.**

Where, upon an appeal from a conviction of burglary, the bill of exceptions did not show what evidence the witness gave on the subject of the character of the house or room, the matter can not be considered on appeal.

**8.—Same—Breaking—Sufficiency of the Evidence.**

Where, upon trial of burglary of a private residence in the night-time, the State introduced in evidence the confessions of the defendant, in which he said that he pushed the door of the alleged house open in the night-time and got the goods, the contention of defendant that the testimony failed to show that the door of the alleged residence was closed at the time he entered and stole the property is not well taken, and there was no reversible error in the charge of the court.

**9.—Same—Rehearing—Indictment—Private Residence.**

Where the indictment charged burglary of a private residence at night in the approved form and under which the defendant was convicted, appellant's contention in his motion for rehearing that the count under which he was convicted of the burglary of a private residence at night contained all the ingredients to constitute ordinary burglary, and that therefore the indictment was defective and the judgment should be reversed and the cause remanded is untenable. Following Curtis v. State, 76 Texas Crim. Rep., 660, and other cases.

**10.—Same—Indictment—House—Private Residence.**

The statute prescribing the offense of burglary of a private residence at night does not use the word "house" in designating the private residence, but uses alone the words "private residence," and where the indictment follows the statute in averring the burglary of a "private residence" under which defendant was convicted, there was no reversible error. Following Favro v. State, 39 Texas Crim. Rep., 453.

**11.—Same—Agreed·Statement—Confronting Witnesses.**

Where, upon appeal from a conviction of burglary, the record showed that the testimony of the absent witnesses was agreed to by the attorneys for both parties in open court when appellant was present and heard it, and that it was stated to the jury as the testimony of these witnesses, and there was no objection thereto until appellant submitted his motion for rehearing, there is no reversible error. Following Eoff v. State, 75 Texas Crim. Rep., 245, and other cases.

Appeal from the District Court of McLennan. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of burglary of a private residence at night; penalty, five years imprisonment in the penitentiary.

The opinion states the·case.

*James E. Yeager,* for appellant.—On question of insufficiency of the evidence: Milton v. State, 6 S. W. Rep., 303; Garcier v. State, 195 S. W. Rep., 196; Cox v. State, 194 S. W. Rep., 138.

On question of insufficiency of the indictment: Jones v. State, 50 Texas Crim. Rep., 100, 96 S. W. Rep., 44.

On question of confession and charge of court: Bird v. State, 90 S. W. Rep., 651; Roberson v. State, 51 Texas Crim. Rep., 335, 101 S. W. Rep., 800; Johnson v. State, 96 S. W. Rep., 45.

On question of argument of counsel: Barnett v. State, 50 Texas Crim. Rep., 100, 99 S. W. Rep., 556.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of the burglary of a private residence at night and his punishment assessed at the lowest prescribed by law.

The statute describes this offense as constituted "by entering a private residence by force at night with the intent of committing a felony or the crime of theft" (art. 1305, P. C.) and article 1314, to this effect: "The term 'private residence' shall be construed to mean any building or room occupied and actually used, at the time of the offense, by any person or persons as a place of residence." The indictment was in two counts. The first, under the articles just stated and the other for burglary of a house in daytime. The court submitted the first and did not submit the second at all. This practice of indicting in different counts when the transaction is the same for night-time burglary of a private residence and daytime burglary of a house, has been many times commended and held proper by this court. (Jackson v. State, 71 S. W. Rep., 280; Martinez v. State, 51 Texas Crim. Rep., 584; .Johnson v. State, 52 Texas Crim. Rep., 203; Hawthorn v. State, 62 Texas Crim. Rep., 114; Fox v. State, 62 Texas Crim. Rep., 430.)

The count of the indictment submitted, in .addition to other necessary requisites of any indictment, alleged that on or about February

24, 1917, "One, James Robinson did unlawfully, by force, threats and fraud and at night, burglariously and fraudulently break and enter a private residence then and there occupied and used by Will Holston as a place of private residence, without the consent of the said Will Holston, then and there with the intent on the part of the said James Robinson fraudulently to take, steal and carry away from and out of said private residence corporeal personal property then and there in said private residence being and belonging to the said Will Holston from the possession of the said Will Holston and without his consent, with intent to deprive the' said Will Holston, the owner of said corporeal personal property of the value thereof, and with intent to appropriate to the use and benefit of the said James Robinson."

Appellant made no motion to quash the indictment, but after the trial he did make a motion in arrest, of judgment, claiming the indictment was fatally defective on these grounds:

1. It failed to allege that the private residence was a building or room.  2. It charged the intent to steal after defendant entered the private residence and did not allege that he had formed the intent to steal or commit the crime of theft before entering the house.  3. It failed to charge defendant with intent to commit the crime of theft, but used the word "steal" when the statutory word is "theft."  4. It failed to charge defendant with intent to commit theft in that it did not describe any property of value, or so that its value could be judicially known by the court or estimtaed in any manner.  5. It failed to charge that the alleged property was in the possession of Holston.  6. It was duplicitous in that it charged a night-time burglary and a daytime burglary in the same count in that it charged defendant with breaking into a house, if a private residence is a house, with the intent to commit theft in addition to the crime of burglarizing a private residence.

We see no necessity of discussing these various objections to the indictment. We have copied it above and a comparison thereof with the statute shows that the indictment was sufficient against any and all of his objections.

By appellant's first bill of exceptions he objected to the introduction of what he alleges was a written statement signed by appellant on the ground that the State had failed to show that it was made freely and voluntarily after having first been cautioned that it might be used against him, and explaining the nature of the offense he was charged with, he being at the time in jail and in custody of an officer. The bill in no way discloses what the testimony was on the subject nor did it disclose what the statement or confession was. On that ground alone the bill is insufficient. The court before approving the bill qualified it as follows: "The evidence showed that defendant was not in jail but in the county attorney's office at the time he made a statement and confession which was introduced in evidence. The assistant county

attorney before whom the confession was made testified that the proper legal warning had been given defendant before he made his confession and that 'no promise or threat was made to induce defendant to confess and that his statement about the charge against him was freely and voluntarily made, but in view of the defendant's testimony the court submitted to the jury the question of whether or not the confession was freely and voluntarily made. The written confession on its face filled the requirements of the law." This bill shows no error.

His next bill alleges that the State offered to prove by Holston his custom and habit as to shutting the door before retiring each night and that he objected on the ground that it was not legitimate testimony. He says the court overruled the objection and permitted the witness to testify; but the bill in no way shows what the testimony of the witness was. This bill of itself is insufficient to show any error. But the court before approving it qualified it thus: "Said witness had testified that he thought the door was closed; on cross-examination he recalled that probably on one occasion he had left the door open, and the State then asked him if it was his practice to close the door at night. If there was any relaxation of the rule in this instance it could not have been harmful to the defendant, for in his confession he admits that he 'pushed the back door open and got the flour and meal' out of the house he was charged with entering."

His next bill alleges that during the argument of the State's attorney he said "the evidence shows that defendant was sitting on the front steps of Will Green and saw Will Holston when he brought the groceries home"; that he promptly objected, claiming that the evidence did not show that fact; that the county attorney then said: "Well, it was agreed to before the trial began." He again objected and the court overruled both objections, to which he excepted. The court before approving that bill qualified it thus: "The county attorney and defendant's attorney had some agreement as to what two absent witnesses for the State would testify to if present. During the closing argument of the State, defendant's attorney interrupted him with an objection that the evidence did not show that a statement made by the couny attorney about the testimony of the absent witness was in the record. The county attorney replied that, 'Well, we agreed that they would so testify if they were present.' I do not remember just what the details of the agreement were; but I do know that in order to accommodate defendant's attorney the State agreed to go to trial if he would admit that two witnesses upon whom subpoenas had not been served would testify if present. The county attorney contending that the agreement was that Will Green and Mattie Green, two negroes, would, if present, testify that the defendant, who was and is also a negro, was at their home at the time that Will Holston, who lived next door to said Greens, came home in the afternoon bringing with him some groceries; that the defendant saw said Will Holston when he came home and that

the defendant remained at their home till some time after midnight, when he got up and told them he was going home. The defendant said part of the statement was agreed upon, but that it was not agreed that defendant saw said Will Holston when he came to his home. The agreement being oral the court could not say just what was agreed upon, but left the matter to the jury." As thus qualified it shows no error.

The whole of the next bill, after the style and number of the cause, is: "Be it remembered that upon the trial hereof the court instructed the jury as follows: 'If you believe from the evidence defendant did not voluntarily make the written statement which has been introduced in evidence against him, or if you have a reasonable doubt thereof you will not consider the same,'" which is signed by appellant's attorney. The court qualified this by stating: "that no exception was made to this charge at the time and no special charge was asked and the charge is all right anyhow." This bill shows no error.

His last bill, after the style and number, is: "Be it remembered that upon the trial hereof the State offered to prove by Will Holston and others that the alleged private residence was a house and a room in a house, and defendant objected on the grounds that the indictment did not allege that it was a house or a room in a house, the court overruled the objections, and defendant then and there duly excepted to the court's ruling and here now presents this his bill of exceptions and prays that it be allowed and ordered filed as a part of the record in this cause." Which was signed by his attorney. This bill does not show what evidence Holston gave on the subject and it presents no error.

The only other question appellant presents, necessary to state, is his claim that the testimony failed to show that the door to the alleged residence was closed at the time he entered and stole Holston's property. We will give the testimony in full on this subject.

On cross-examination by appellant of the State's witness, Holston, he testified: "No, sir; I am not in the habit of leaving that door open. I did not leave that door open on purpose; it might have been left open occasionally. Occasionally I left the door open, yes, sir. I could not swear that the door was shut the night before when I went to bed. I usually shut it. It was open that morning. I usually shut it. It was open the next morning when I got up. I could not say whether it was shut or not." On redirect examination he testified: "I am not in the habit of leaving the kitchen door open. I usually shut my door when I go home. I do not recall any other time during the last six months that I left that door open. Just like anybody else, I don't lock my doors; once in a while I just close them. I do not really know, but I think I closed the door that night. Of course, after I was asleep I do not know. It was open the next morning. I say, I thought I closed it; I couldn't say that I did, but then I thought I closed it. I

think I closed it because I usually close it every time I go to bed."
On examination by the court he testified: "That door has no catch
on it. You just shut it. It hasn't got no latch on it at all. We have
a string inside there. We have a screen door there. We puts a string
on it and tie it sometimes when we want to shut the screen door. That
screen door has no fastening at all, no more than a regular outfit which
just shuts and a knob. The catch on the door has been broke. I do
not know whether it was latched or not, but the catch has been broke
on it. It was out of order once or twice. The door stays shut when
I shut it because it is kinder tight. It shuts tight. We shut it some-
times with a string, but it shuts tight. I just pull the string through
the crack and shut it and that is what holds it most of the time."

In said confession or statement, which was clearly proved up, as
stated by the court, and which was unquestionably in terms prescribed
by the statute, appellant said: "I was gambling with Will Holston
Saturday night at a vacant house next to his house on South Fifteenth
Street. We were dealing monte. Galbert Wilson, John Wilson, Sam
and Quince had been there playing monte, and a lot more whose names
I don't know. Will Holston sold me a sack of flour and a sack of
meal for $1.90. I gave him the money and won it back from him. He
said when I got ready to go home I could go to his house; that he
would leave the back door open, and I could get the flour and meal.
He left the game before I did. I went by his house. I saw him in
bed asleep. I pushed the back door open and got the flour and meal
where he said it was. I went out, closed the door and went home. It
was a little after 12." The State reintroduced said witness Holston,
who swore positively that he did not play monte with the persons or
any of them named by appellant, and that he never played any kind
of game with appellant; that he (witness) did not win any money
from him (appellant), and that appellant did not win any money from
him (witness), and he did not sell him the sack of flour and meal for
$1.90; that nothing like that ever occurred between him and appellant.

Appellant himself testified that he gambled at the time with the par-
ties stated in his confession, and in fact reiterated on this point what
he had stated in his confession. He stated that Holston had left the
door open just like he said he would and that he went in and got the
stuff where he had it all fixed up. And further, "the door was already
open when I went in there. I just went in and got the stuff and came
on out, and left the door just like it was, open. If I said in the con-
fession that I pushed the door open, it was not true, the door was al-
ready open." On cross-examination he swore: "The reason that con-
fession says I pushed the door open there, that is, when he (Mr. Woods)
asked me did I push the door open. I might have told him—he was
talking to me so fast—yes, sir; I signed the statement. He told me
to sign it. I thought I had to do what he said do. I read the state-
ment. He did not read it over to me. I did not notice it good when

I signed it. I did not notice that 'pushed' in there. It is true that I went in the house. That charge is true. It is true that I got the meal and the flour and the baking powder. I got it out of this house where Will Holston lives. I got it in the night-time between 1 and 12 o'clock." Mr. Woods, assistant county attorney, who took the confession, and Mr. Jenkins, who was present and with Woods witnessed it, both swore in effect that the confession was explained and read to appellant, and that he himself read it before he signed it, and that appellant at the time stated what was contained in said statement or confession.

The testimony shows that the evening before the alleged burglary that night, Holston bought some flour, meal, peas and a can of baking powder; that he took them to, and placed them in, his residence; that the next morning all these articles were gone and he told an officer about it, who succeeded in recovering for him all the articles except a part of the peas, that he got back only a part of them. Appellant denied getting the peas.

The court, in his charge, required the jury to believe beyond a reasonable doubt all the essentials to said offense before they could convict appellant. In addition he told the jury that if the said Holston sold the flour, meal and baking powder to appellant and told him he would leave the door open and he could call, enter and get the goods, and that in direct pursuance of such permission he did enter said house and get said provisions, to acquit him, or if they had a reasonable doubt thereof to acquit him. Again, he specially charged the jury that: "If you believe from the evidence that the door to said Will Holston's residence was open and the defendant entered said residence and stole said groceries, or if you have a reasonable doubt thereof, you will acquit him." He also charged the burden of proof was upon the State, the presumption of innocence and the reasonable doubt.

·On the whole we think that the evidence on this point was sufficient to sustain the conviction.

The judgment will, therefore, be affirmed.

*Affirmed.*

ON REHEARING.

January 16, 1918.

PRENDERGAST, JUDGE.—Appellant presents for rehearing some of the same questions discussed and decided against him in the original opinion. Nothing new is presented thereby; it is unnecessary to again discuss them.

However, he contends that the court misunderstood his contention about the insufficiency of the indictment. He states that he did not contend that more than one count should not be contained in the indictment. It was not intended in the original opinion to so state his

contention. In the original opinion the grounds on which he claimed the indictment was bad were accurately stated. What he contends now is that the count under which he was convicted of the burglary of a private residence at night contained all the ingredients to constitute ordinary burglary, that is, burglary not of a private residence. His contention may be further stated from his motion as follows: "That if a private residence is a house within the meaning of the statute, then if under the evidence this house should not have been Will Holston's private residence but had been shown to be Will Holston's other kind of a house, and defendant convicted therefor, then this one count would have contained two indictments in one count. . . . The court only instructed as to burglarizing a private residence at night, but the question is, suppose the evidence had shown that it was not a private residence, could a conviction have still been had for burglary at night, or for burglarizing a house by breaking in the daytime? Appellant contends that such conviction could have been had if the evidence had been such as to sustain it."

The count under which appellant was convicted, which was quoted in the original opinion, avers the burglary of a private residence at night solely. It does not charge the burglary of any other house other than a private residence at night. Under it he could not have been convicted for any other burglary whatever.

In Curtis v. State, 76 Texas Crim. Rep., 661, it was shown that appellant therein had been previously indicted and placed on trial under an indictment charging him with an ordinary burglary by force, etc., without alleging it was burglary of a private residence in the nighttime, whereas the one under which the conviction therein against him was obtained charged him with the burglary of a private residence at night. This court, through Judge Davidson, in that case held: "Upon the first trial, after proceeding with the trial before the jury, in the introduction of evidence, it is to be supposed from the pleadings it was discovered that the house was a private residence, the burglary being committed at night. Appellant could not, therefore, be convicted under a charge of ordinary burglary. Burglary of a private residence at night is a distinct and different offense, made so by the statute expressly. In other words, under an indictment charging ordinary burglary a party can not be convicted for the burglary of a private residence at night; nor can he be convicted, if the charge is for burglarizing a private residence, for the ordinary burglary." This has been the holding of this court uniformly, and in many cases.

In 2 Branch's Ann. P. C., p. 1290, he lays down these correct propositions of law applicable herein: (1) If the count on which defendant was convicted is for ordinary burglary, and the proof shows a burglary of a private residence at night, the variance is fatal, the two offenses being separate and distinct, citing Fonville v. State, 62 S. W.

Rep., 573; Martinus v. State, 47 Texas Crim. Rep., 528; Mays v. State, 50 Texas Crim. Rep., 391; Rodgers v. State, 59 Texas Crim. Rep., 146. (2) Where the proof shows a burglary of a private residence at night, a conviction for ordinary burglary will be set aside, the two offenses being separate and distinct, citing Jones v. State, 47 Texas Crim. Rep., 128, and Martinus v. State, 47 Texas Crim. Rep., 528.

The uncontradicted evidence herein shows that the house burglarized was the private residence of Holston, and that the burglary was committed in the night-time. So that there is no merit at all in appellant's contention.

Our statute prescribing the offense of burglary of a private residence at night does not use the word "house" in designating the private residence, but uses alone "private residence." The indictment in this instance followed the statute in averring the burglary of a private residence. However, article 1309, Penal Code, defines what is meant by a house as "any building or structure for public or private use, . . . and of whatever material it may be constructed." In Favro v. State, 39 Texas Crim. Rep., 453, this court, in another opinion by Judge Davidson, held that an humble structure built of odd planks and boxes and covered with a wagon sheet, and used by the occupant as his residence, was a house within the meaning of the burglary statute, among other things holding therein: "Such a structure is as much under the protection of the burglary statute as would be a structure entirely made of wood or stone, brick or granite. The law does not mention the character of structure or the material of which it shall be made. It protects the humble tenant in his tent as well as his more fortunate neighbor in his palace." There is, therefore, no merit in appellant's further contention, in substance, that because the indictment alleged that appellant burglarized the private residence of Holston at night, proof was not admissible that such private residence was a building or a room. The uncontradicted evidence showed that the private residence of Holston, which appellant burglarized at night, was an ordinary house in which there was a room or more than one room.

For the first time in this court, after even the cause had been submitted on appellant's motion for rehearing, he contends that the agreed evidence of the two State's witnesses, who were absent, was inadmissible on the ground that he was deprived of being confronted by the witnesses by the agreement made between his and the State's attorney as to what their testimony would be, and contends that the attorneys could not waive the sanctity of their testimony under oath. The record shows that the testimony of these two witnesses was agreed to by the attorneys in open court when appellant was present and heard it, and that it was stated to the jury as the testimony of these two witnesses. Appellant did not then or at any other time during the trial make any objection whatever to the admission of this agreed testimony of these witnesses. He took no bill thereto; he did not make it a ground of the

motion for a new trial, and, as stated, for the first time at this late date makes said objection. This presents no ground for a rehearing or a reversal. Eoff v. State, 75 Texas Crim. Rep., 245; State v. Levy, 170 S. W. Rep., 1114. This court has also so held in other cases.

The motion is overruled.

*Overruled.*