## Ex Parte O. V. Beck.

### No. 6335. Decided June 24, 1921.

### Rehearing Denied May 24, 1922.

**1.—City Charter and Ordinance—Jitneys—City License.**

Where relator was arrested for the violation of an ordinance of the city of Temple for not paying a license tax, etc., under a special charter, and sued out a writ of *habeas corpus* contending that the ordinances of the city of Temple were in conflict with the provisions of the State Highway Act, and that the ordinance in question did not apply to the business he was conducting, in running a jitney line partly outside of the city, because he was not operating from points within to other points within said city, but but from points within to points without said city, said contention was untenable, and a writ of habeas corpus is denied. Following Ex Parte Parr, 82 Texas Crim. Rep., 525.

**2.—Same—State License—City License—Conflict of Law.**

Relator's contention that having paid the license required of him by the State law, as the operator of an interurban commercial motor vehicle, and that the city of Temple had no authority to require a license of him, is untenable, as is also his contention that there is a conflict between the ordinances of the city and the State law with regard to the penalty. Distinguishing Ex Parte Goldberg, 82 Texas Crim. Rep., 475.

**3.—Same—Case Stated—City Ordinance—Jitney Driver—City License.**

Where relator resides within the corporate limits of the city of Temple, has his business home there; maintains within the city the vehicles for the operation of his enterprise; that his business originates within the city and his routes begin and terminate there; that he uses the streets of the city in the conduct of his jitney business, he is within the perview of the ordinances of the city which require a license. And the application for writ of *habeas corpus* is denied.

From Bell County.

Original application for writ of habeas corpus asking release from arrest for a violation of a city ordinance requiring a license tax for driving jitneys within the city for hire.

The opinion states the case.

*John B. Daniel,* for relator. Cited cases in opinion.

*R. H. Hamilton,* Assistant Attorney General, for the State.

HAWKINS, Judge.—In 1907 the Legislature granted the city of Temple, as a municipal corporation, a special charter, under which it is still acting. By the provisions of that charter the city was granted ample authority to enact and enforce the ordinances hereinafter referred to, unless forbidden by some State law then in force, or subsequently enacted.

In August 1915 the city council passed what is called the ''Jitney Ordinance.'' Section 1, sub-division b, reads as follows:

'' 'Jitney' shall mean and include any motor vehicle engaged in the business of carrying passengers for hire over any regular route or routes, and between specific termini, stations or places, or which is held out or announced by sign, voice, device or advertisement so as to operate or run or having a particular time of departure from, and arrival at, any terminus, station or place, or operating or holding out to operate for the purpose of affording a means of local transportation similar to that ordinarily afforded by street railways, by indiscriminately accepting and discharging such persons as may offer themselves for transportation along the way or course on which it is used or operated.''

Section 3 of said ordinance classifies cars according to their seating capacity, and provides a license of twenty-five dollars per year for those having a capacity of five persons or less; thirty-five dollars per year for those having a capacity between seven and five and fifty dollars per year for those with a capacity of more than seven persons. The ordinance further provides for the manner in which applications for licenses may be made, and for the execution of a bond, which in its terms is very similar to that required by the city of San Antonio as shown in the case of Ex parte Parr, 82 Texas Crim. Rep., 525; 200 S. W. Rep., 404. It is made unlawful for any jitney or car to be operated on or along any streets in the city of Temple, unless the owner thereof has secured a valid license as prescribed by the ordinance, and a violation of such provisions is fixed at a fine of not less that five nor more than two hundred dollars.

In September 1915 the city council adopted a further ordinance, Section 1 of which reads as follows:

''Hereafter every person, association of persons, firm or corporation,

who owns, operates, uses or conducts, or who causes to be operated, used or conducted for public hire, an automobile or motor vehicle for the carriage of passengers, for hire within the City Limits of the City of Temple, whether the carriage of such passengers be confined to the City Limits, or whether such passengers be carried from any point or points, within the City Limits to any other point or points, shall, before so operating, conducting or using the same, or causing the same to be operated, used or conducted, procure and obtain a license for each such automobile or motor vehicle from the City Secretary of the City of Temple, and shall pay to said City Secretary for the benefit of the City of Temple the sum of Twenty-five dollars . ($25) per year for each license so furnished for each of such automobiles or motor vehicles. Provided that the owners and drivers of ambulances and hearses shall be exempt from the provisions of this ordinance.''

That ordinance also provides for the execution of a bond similar in its terms to those mentioned in the other ordinance, and provides for the same penalty as the first ordinance against the operation of such automobile or motor vehicle without obtaining the license provided in the ordinance. Said last mentioned ordinance repealed all ordinances and parts of ordinances in conflict therewith.

No issue is made as to whether the latter ordinance repeals or conflicts with the first, and that matter will not be considered or discussed.

It is agreed that relator resides with his family within the corporate limits of the city of Temple; that he and one Grubbs are co-partners in the business of running a garage and automobile sales room; that they owned what is known as a ''Reo Speed Wagon,'' a one and a quarter ton motor vehicle specially equipped for carrying passengers and having a seating capacity for twelve persons. That about sixty days prior to May 8, 1921, relator and the said Grubbs began to operate one of said motor vehicles for hire between the cities of Temple and Balton, both in Bell County, and have since been so engaged. That relator has registered said motor vehicle as an ''interurban motor vehicle'' under the provisions of the State Highway Act. That he conducted the business of operating said interurban motor vehicle between the cities named, which are about nine miles apart. That relator operated the same regularly over Main Street, Avenue A. Third Street and Avenue G, all located within the corporate limits of the city of Temple; that he has stated times within which to leave a certain place inside the corporate limits of the city of Temple and certain time for the arrival of the said vehicle in the city of Belton. That said motor vehicle carried a sign ''From Temple to Belton 35 cents,'' meaning that relator charged each passenger so transported the sum of thirty-five cents. The agreed fare covers the transportation of passengers from within the corporate limits of Temple, as well

as the entire trip between said towns.  The relator does not transport and carry for hire passengers from one point within to another point within said city of Temple, that is, he does not pick up passengers within the corporate limits of the city of Temple and haul same to another point within the porporate limits and charge a fare therefor, but all passengers handled by him are from points within to points without said city, or from points without to points within the city. It is further agreed that relator had not complied with any of the provisions of the ordinances of the city of Temple with reference to paying license, as required by the ordinances hereinbefore set out. That on the 8th day of March, 1921 the relator picked up within the business district within the city of Temple passengers at the Farmers State Bank corner, on the public square, and at the Stegall and Martin hotels, and carried them over the streets mentioned to points without the corporate limits of the city, discharging some at intermediate points between Temple and Belton, and the remainder within the corporate limits of the city of Belton. · Upon his return trip he brought passengers from without the city and delivered them at points within the city of Temple.

Relator was arrested for a violation of the first ordinance, and files an original application for writ of habeas corpus with this Court, in which he contends, (a) that the ordinances of the city of Temple are in conflict with the provisions of the State Highway Act, and therefore became inoperative when the legislature passed the latter statute, and (b) that the ordinance in question does not apply to the business he was conducting, because he was not operating from points within to other points within the city, but from points within to points without the city.

We would be inclined to decide the first proposition against relator's contention on the authority of Ex parte Parr 200, 82 Texas Crim. Rep., 525; 200 S. W. Rep., 404, and authorities therein cited, and rest the matter there without further discussion, but for the fact that it urged that the Highway law, as amended at the Regular Session of the Thirty-sixth Legislature, 1919, Chapter 113, page 174, makes the Parr case inapplicable.  The Act of the Thirty-fifth Legislature, 1917, Chapter 190, page 425, after providing for the registration and license fees of motor vehicles, contained the following, being a part of Section 25:

"But this provision shall not affect the right of incorporated cities and towns to license and regulate the use of motor vehicles for hire in such corporation."

The Parr decision rested largely on the provision just quoted, which made it plain that it was not the intention of the legislature to withdraw from cities and towns the rights theretofore, or which might be thereafter conferred upon them, to license and regulate such vehicles within their corporate limits.  The Thirty-sixth Legislature

amended certain sections of the Act of the Thirty-fifth Legislature, but did not in any way repeal or amend the provision last quoted.

The Act of 1919 defines "An interurban commercial motor vehicle" as one with a net carrying capacity of more than one ton that is used regularly in carrying passengers or freight for hire between cities, towns and villages in this State. It then fixed the annual license fee, based on the carrying capacity. In addition, it fixes a mileage tax. But still having regard for the rights of the cities, it is provided in Section 16-a: "but such mileage shall not include the streets of any incorporated town or city."

Relator contends that having paid the license required of him by the State law as the operator of an "interurban commercial motor vehicle," the city of Temple has no authority to require a license of him. That was the contention in the Parr case, supra. The Act of 1917 provided for the registration and license of motor vehicles based on horsepower, and carrying capacity, and the contention was that the city of San Antonio had no right to require a license of motor vehicles because the State had assumed control thereof. This Court decided against such contention. For the reasons therefor reference is made to the many authorities cited in that case. The fact that the Act of 1919 to some extent changed the designation of certain motor vehicles, and re-classified them, would not operate to suppress the validity of the ordinance in question, nor render the holding in the Parr case inapplicable to relator's contention, unless he is excluded from the provisions of the ordinance because operating from points within to points without the city, and vice versa.

It appears from the agreed statement of facts that in the conduct of his business relator makes use of four streets in the city of Temple. He picks up passengers at four points in the city. If he can do this and not be responsible to the ordinance in question because the ultimate destination of his passengers is to a point outside, or from a point outside to points within the city, he could, according to the logic of his contention, use every street in the city, go to and receive passengers from every residence within the corporate limits, provided their destination was to a point outside, and likewise deliver passengers to every house, and over every street, so long as their passage began at an outside point. If he could use one vehicle to conduct such business, with equal reason a hundred could be used for the same purpose, if the demands of the business required it. The streets are improved and maintained by the city for the ordinary use, and convenience of those living within its limits, or who may be passing through, or have occasion to pass over them in the ordinary course of trade or pleasure. The streets are being used by relator in the conduct of a commercial enterprise for his own financial gain. They are a part of his business equipment.

In Sacramento v. California Stage Company, 12 Cal. 134, the

court, in discussing a question very similar to this, disposed of it, in the following language; the quotation being the entire opinion.

"Under a provision of the City Charter, the authorities have power (to levy and collect a license tax on theatres, and on trades, professions and business,) etc. Under this section of the Charter, they imposed the tax on the defendants, who are a company whose office and place of business is in the city, but whose business is the carriage of passengers from and to the city. The question is made whether, inasmuch as the larger portion of this work of transportation is done without the territorial limits of the city, the authorities have a right to levy this tax upon them; and, on this question, we have no doubt. The Company receive and discharge their passengers, and make contracts here for their conveyance, and they have their offices and property here, within the protection of the municipal laws. The mere fact that the business of carrying the passengers is not within the municipal limits, does not make the receiving and discharging of them and contracting for them less a business here.

"If this business is not a business in Sacramento, it is difficult to say where it is. The Company have as much need of the protection of the laws of the corporation, and are as much interested in the police expenditures, especially for streets, roads, etc., as any other persons, and we think are within the words and spirit of the taxing power."

Relator contends that there is a conflict between the ordinances of the city and the State law with regard to the penalty. He quotes extensively from Ex parte Goldburg, 82 Texas Crim. Rep., 575, 200 S. W. Rep., 386, and seems to rely largely on that opinion. The opinions in the Goldburg and Parr cases were handed down the same day, January 16, 1918, and it can scarcely be possible that the members of this Court as then constituted could have regarded them as in conflict. A dissent by Judge Prendergast is noted in the Goldburg case, but for another reason. We are not out of harmony with the general principles announced in Ex parte Goldburg, nor with the conclusion reached. We think it has no application to the present case. The city of Temple is in no way undertaking to interfere with the authority granted by the State to an interurban commercial motor vehicle operator. It is seeking only to license and regulate one who is using the streets for business purposes under authority expressly conferred upon it by the legislature in granting its charter, and reserved to it in Section 25 of the Act of the legislature, 1917, heretofore quoted, and which is still in force.

Relator resides within the corporate limits of the city; his business home is there; he maintains within the city the vehicles for the operation of his enterprise; his business originates in the city, and his route begins and terminates there; he uses the streets of the city in the manner hereinbefore indicated in the conduct of his business.

Under the agreed facts, we cannot persuade ourselves that relator is not within the purview of the ordinances of the city in the matter of requiring a license.

Many interesting questions are raised in relator's brief, which the Court is not at this time called upon to decide in disposing of the matter before us.

The application for writ of habeas corpus is denied.

*Writ denied.*

ON REHEARING.

May 24, 1922.

MORROW, Presiding Judge.—In substance, the motion is but a renewal of the contentions advanced on the original hearing. After a review of them, we are unable to form the conclusion that we were in error in the former disposition of the case.

The motion is therefore overruled.

*Overruled.*