STATE v. GEORGE D. JARVIS.

May Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed October 11, 1915.

*Municipal Corporations—Ordinances—Validity—Construction—*
*Statutory Provisions—"Hackney"—"Hackney Carriage"—*
*"Hackmen"—Automobiles—Licenses—Validity—Construc-*
*tion—Discrimination—Prosecution for Violation of Ordi-*
*nance—Complaint.*

"Hackney," when used as an adjective, means "let out for hire," or "devoted to common use," as "hackney coaches," and "hackney carriages" are carriages plying for hire in the streets, and so §48, No. 242, Acts of 1908, the charter of the city of Burlington, empowering the city council to license the owners or drivers of "hackney coaches, cabs or carriages, and to regulate their fees and prescribe their duties," gives authority to license the owners or drivers of carriages plying for hire in the streets of the city, and to regulate that business, and authorizes an ordinance providing that persons engaged in carrying for hire persons with or without baggage from place to place within the city are "hackmen," and that no person shall act as a hackman unless licensed.

Where a municipal ordinance in one section provides that persons engaged in carrying for hire persons with or without baggage from place to place within the city are hackmen, the next following section, providing that no person shall act as a hackman unless licensed, does not use the term "hackman" in its common-law meaning, if, perchance, it has any well-settled meaning at common law, but manifestly thereby designates the persons to whom the ordinance had just applied that term.

A municipal ordinance should be given a reasonable construction, and where a city charter gives the council full jurisdiction over a subject-matter, its ordinances relating thereto will be supported by every reasonable intendment.

An automobile is a "carriage," and whether it is also a "hackney carriage" depends on the use made of it, and not on its motive power, and so a city ordinance providing that persons engaged in carrying for hire persons with or without baggage from place to place within the city are hackmen, and that no person shall act as a hackman unless licensed, made under a charter provision authorizing the city council to license the owners or drivers of "hackney coaches, cabs or carriages, and to regulate their fees and prescribe their duties," prohibits the business of carrying persons for hire in automobiles, unless a license is obtained, though the ordinance does not refer to automobiles, but was enacted before they were in use, and though in other sections it refers to horses, as this does not restrict the section in question to horse-drawn vehicles.

The facts that automobiles so used did not stand on the streets when not in use, and that their owner did not solicit business on the street, did not place them without the ordinance, for although hackney carriages are commonly let for hire at stands on the street, they have the same quality if kept on private grounds or in a garage, as it is the use made of them and not the place where they are kept, nor the manner of soliciting the business in which they are used, that brings them within the purview of the statute.

§3, No. 99, Acts 1908, providing that automobiles shall be exempt from taxation, merely exempts them from the local property tax, and does not abridge the power of the council of the city of Burlington under the city charter, §48, No. 242, Acts 1908, to regulate their use as hackney carriages.

Where a city ordinance provided that persons engaged in carrying for hire persons with or without baggage from place to place within the city, and prohibited any person acting as hackman unless licensed, a complaint charging that respondent knowingly, wilfully, and unlawfully engaged in the business of carrying persons for hire from place to place within the city, and did then and there act as a hackman within said city without being licensed therefor, charged a violation of the ordinance, without reference to the allegation that respondent "did then and there act as a hackman within said city," which may be rejected as surplusage.

COMPLAINT charging a violation of a city ordinance. Plea, not guilty. Trial by the city court of the city of Burlington, January 23, 1915, on an agreed statement, *C. S. Palmer*, City Judge. Judgment, guilty; and sentence thereon. The respondent excepted. The opinion states the case.

*V. A. Bullard* for the respondent.

*Alfred L. Sherman*, City Attorney, for the State.

TAYLOR, J. The respondent was prosecuted in the city court of Burlington on a complaint charging in substance that on a certain day in the city of Burlington he did knowingly, wilfully and unlawfully engage in the business of carrying persons for hire from place to place within said city and did then and there act as a hackman within said city without being licensed therefor, in violation of a city ordinance which is set out at length in the complaint. The case was heard on an agreed statement of facts, upon which the respondent was adjudged guilty and sentenced. To the judgment and sentence the respondent excepted, execution of sentence was stayed and the cause passed to this Court.

The ordinance in question reads as follows: "Sec. 37. Persons engaged in the business of carrying for hire persons with or without baggage from place to place within the city are hackmen; nothing herein shall be construed to apply to keepers of livery stables who let horses in the ordinary course of livery business, but livery keepers who on any one day engage in the business of carrying passengers as aforesaid shall be subject to all the provisions relating to hackmen.

Sec. 38. No person shall act as a hackman unless licensed."

The respondent is a resident of the city of Burlington. With other business he owns and conducts in said city a garage at which he carries on an extensive automobile repair business and stores and sells automobiles and automobile supplies. He also owns several automobiles, varying in number from one to eight, kept in said garage and operated by regularly licensed chauffeurs, by means of which persons are carried for hire wherever they desire from place to place within the city of Burlington, and as well to places without the city. This part of the respondent's business is not conducted during the winter months,

16

viz.: from about December 1 to about May 1. The automobiles thus employed do not occupy hack stands on the streets of the city but are always kept in the respondent's garage when not in actual service. Patronage is not solicited on or about the streets but the services of the machines are obtained by going or sending to the garage and by telephone. The respondent has paid all taxes required by the state on the machines in question. The city claimed that the respondent was subject to the requirements of the city ordinances relating to hackmen, but the respondent neglected to procure the required license and this prosecution followed.

The respondent contends that the definition in the ordinance quoted above of what constitutes a hackman is not warranted by the city charter; that the word "hackman" as used in the charter refers to the common-law hackman; that the city council can only license such a hackman and define what he shall do; that it has no authority to say who are or who are not hackmen. This argument is based upon a misinterpretation of the charter and ordinance. The charter of the city of Burlington confers upon the city council the power "to license porters, cartmen, and the owners or drivers of hackney coaches, cabs, or carriages, and to regulate their fees and prescribe their duties." No. 242, Acts of 1908, Sec. 48.

It will be observed that the word "hackman" nowhere appears in the charter. It is the owner or driver of a hackney coach, cab or carriage whose business may be regulated by license. Webster defines the word "hackney," used as an adjective, thus: "Let out for hire; devoted to common use * * *; as hackney coaches." Bouvier says hackney carriages are carriages plying for hire in the streets. 1 Bou. Law Dic. 924. This is the meaning uniformly given to the term by the courts of England. See 21 Cyc. 355, 356, and cases there cited. It follows that the authority delegated to the city council is to license the owners or drivers of coaches, cabs and carriages that ply for hire in the streets of the city and regulate such business.

Turning to the ordinance under discussion, it in effect provides that no person, with an exception not now material, shall engage in the business of carrying persons for hire from place to place within the city without a license. For convenience in framing the ordinances relating to this subject the council adopted the name "hackman" to designate a person engaged in

the business of carrying passengers for hire from place to place within the city. When in the next section they provided that "no person shall act as a hackman unless licensed" they were not referring to the "common-law hackman"; if perchance the term had any well settled meaning at common law. Manifestly they referred to the person to whom they had just applied the term. The two sections taken together constitute the ordinance and, when read together, there is no room for cavil. It is not a question of the authority of the city council to say who are hackmen, but rather, a question whether the charter gave them authority to adopt the ordinance.

We think the ordinance is fairly within the scope of the authority delegated by the charter. It should be given a reasonable construction. The charter gives the city council full jurisdiction over the subject-matter and their ordinances relating thereto will be supported by every reasonable intendment. 2 Dill. Mun. Cor. sec. 591; *Baltimore* v. *Clunet,* 23 Md. 449; *Whitlock* v. *West,* 26 Conn. 406. It was said in the latter case: "In view of the inartificial character of town by-laws, they are especially entitled to a reasonable construction." The ordinance clearly relates to the kind of carriages referred to in the charter and limits the requirements for a license by appropriate language.

It remains to consider whether the respondent's business of carrying passengers for hire was covered by the ordinance. He says that the ordinances do not refer to automobiles; that they were enacted before automobiles were in use and have not since been changed to include them. That the automobile is a carriage needs no argument. Whether it is a hackney carriage depends upon the use made of it and not upon its motive power. Such a use as would make a horse-drawn vehicle a hackney carriage would give the same character to an automobile, whether called an autohack, a "jitney," or what not. The fact that the ordinances are older than the automobile is without force. The business of operating a carriage over the streets of the city for carrying persons for hire from place to place within the city has all along been the thing to be regulated. Happily the language employed was comprehensive enough to adapt the ordinance to changed conditions without amendment. Reference to horses in other sections does not restrict the section in question to horse-drawn vehicles.

Nor does the fact that the machines employed by the respondent in the business did not stand upon the street when not in use, nor the fact that the respondent did not solicit business on the street, affect the result. While hackney carriages may commonly be left for hire at stands on the street, they are no less such if kept on private grounds or in a garage. *Com.* v. *Page,* 155 Mass. 227, 230, 29 N. E. 512; *Masterson* v. *Shot,* 33 How. Pr. 481; *Burton* v. *Turnpike Co.,* 33 Ky. L. Rep. 85, 109 S. W.. 319. As already indicated it is the use made of carriages and not the place where they are kept, or the manner of soliciting the business, that brings them within the purview of the statute. The conclusion is that the ordinance forbids, unless licensed, such a carrying of persons for hire from place to place in the city of Burlington as the respondent by the agreed statement admits having done.

The respondent says that, if the ordinance reaches persons engaged in the business of carrying passengers with automobiles, it is unreasonable "in that the tax imposed discriminates against automobiles" which have already been taxed by the state. If we adopt the respondent's view that the fee paid to the state for registration of automobiles is a tax, he stands in no different position with reference to the license fee for operating his automobile as a hackney carriage than the owner of a horse-drawn carriage. Both are subject to a tax upon their property, though under a different classification, and both, if either, should be exempt from payment of the license fee; for to exempt one and not the other would create just such a discrimination as the respondent complains of. But the respondent is not taxed a second time by this fee for a license. No question is made but that the fee is reasonable for the purposes of regulation. If reasonable with a view to the probable expense of regulation, it is not a tax in the constitutional sense, and therefore its requirement is not repugnant to the constitutional provision regarding taxation. So long as license fees are exacted as an incident of the regulation authorized by law they are not regarded as taxes. They become such only when revenue is the main purpose for which they are imposed. 1 Desty on Tax. 305; *St. Louis* v. *United Rys. Co.,* 210 U. S. 266, 273, 52 L. ed. 1054, 28 Sup. Ct. 630; *Royall* v. *Virginia,* 116 U. S. 572, 29 L. ed. 735, 6 Sup. Ct. 510; *Braun* v. *Chicago,* 110 Ill. 186. See also *State* v. *Pratt,* 59 Vt. 590, 9 Atl. 556; *State* v. *Harrington,* 68

Vt. 622, 35 Atl. 515, 34 L. R. A. 100; *State* v. *Bevin,* 70 Vt. 574, 41 Atl. 655; *State* v. *Hoyt,* 71 Vt. 59, 42 Atl. 973.

The respondent contends that persons who pay automobile taxes under the general law have the right to operate them without the further payment of taxes. The fact that automobiles are exempt from taxation (No. 99, Acts of 1908, s. 3) other than the payment of a registration fee gives them no such standing as the respondent suggests. The statute merely exempts them from the local property tax. The right to operate an automobile on the highways of the state acquired by payment of the registration fee is not an absolute right. There is nothing found in the statutes relating to registration and operation of automobiles that in any way abridges the power conferred upon the city council to regulate hackney carriages within the city of Burlington, if they chance to be automobiles.

Violation of the ordinance in question is charged without reference to the words in the complaint "and did then and there act as a hackman within said city" and they may be rejected as surplusage. The agreed facts show a violation of the ordinance and that the respondent was amenable to the penalty imposed.

*Judgment that there was no error in the proceedings and that the respondent take nothing by his exceptions. Let execution be done.*