IN RE JOHN B. JAMES.

January Term, 1924.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed February 6, 1924.

*Carriers—Common Carrier Subject to Reasonable Regulations Under Police Power—Motor Bus Lines—Power to Regulate Not Affected by Operation Not Being Under Charter From State—Extent of Jurisdiction of Public Service Commission.*

1. One who engages in the business of operating motor busses and therein transporting passengers for hire between villages, thereby holds himself out as a common carrier and by No. 91, Acts of 1923, is declared to be a common carrier, and, as such, is subject to reasonable regulations under the police power of the State.

2. In such case, the fact that the person is not operating under authority of a charter from the State, but by an individual enterprise, makes him none the less subject to such regulations.

3. Outside of any constitutional question, the powers of the Public Service Commission over persons operating motor busses as public carriers must be determined from the power expressly granted such Commission by statute, or necessarily implied as essential to the proper exercise of the power expressly granted.

4. The Public Service Commission was without authority, under No. 91, Acts of 1923, including Chapter 215 of the General Laws so far as applicable thereto, to prohibit the owner of certain motor busses, who had operated them over a defined route and held himself out as a public carrier for more than a year prior to the passage of such Act, and who was willing to comply with all reasonable regulations, from a continuation of their operation because of lack of an affirmative showing that they were required by public convenience or necessity, the "general supervision and jurisdiction of such common carriers," placed upon the Commission by section 4 of such Act not being regulative in character, the word supervision therein meaning the act of overseeing, inspection, or superintendence.

APPEAL from the decision of the Public Service Commission, Bennington County, dismissing petition of the operator of a motor bus line that the Commission make such regulations as it may deem requisite for the safety and protection of the public, and as to bonds or other security for indemnifying the public in event of accident. The opinion states the case. *Reversed and remanded for further proceedings.*

*James K. Batchelder* for the petitioner.

The Public Service Commission is an administrative body, with functions of a judicial nature, but of limited statutory powers, and must be classed with other bodies exercising special and limited powers not according to the common law, as to which nothing will be presumed in favor of their jurisdiction. *Bessette* v. *Goddard,* 87 Vt. 77, 88 Atl. 1; *Colonial Power & Light Co.* v. *Creaser et al.,* 87 Vt. 457; *Sayers* v. *Montpelier & Wells River R. R. Co.,* 90 Vt. 201, 97 Atl. 660; *Town of West Rutland* v. *Rutland Ry. L. & P. Co.,* 96 Vt. 413, 121 Atl. 138; *Benson* v. *Mallory* (Md.), 118 Atl. 852.

The courts cannot supply an evident omission in a statute by judicial legislation under the pretence of construction. *Patchen* v. *Morrison,* 3 Vt. 590; *Perkins* v. *Cummings,* 66 Vt. 485; *Yatter* v. *Smilie,* 72 Vt. 349; *State* v. *Franklin Co. Sav. Bank,* 74 Vt. 246.

*Holden & Healy* for Berkshire St. Ry. Co.

Established public utilities, operating under State franchises, should be protected from competition. *Re Douglas-Agua, Prieta Stage,* P. U. R. 1912B, 857; *Re F. F. Hoffman et al.,* P. U. R. 1920D, 928; *Re Ralph McGlochlin,* P. U. R. 1922C, 215; *Re Chicago Motor Bus Co.* v. *Chicago Stage Co.,* P. U. R. 1919D, 157; *Re Peoples Motor Bus Co.,* P. U. R 1918C, 903; *Re Harry Hurlick et al.,* P. U. R 1919D, 936; *Re T. S. Ashmead et al. and Geo. Graupman,* P. U. R 1916D, 10; *Re People ex. rel. John C. Judge* v. *John F. Hylan, Mayor.* P. U. R. 1922B, 539; *Re Public Service Commission* v. *Hurtgan,* P. U. R. 1916A, 547; *Re United Traction Co.* v. *John Smith,* P. U. R. 1922A, 643; *Chambersburg, etc., St. Ry. Co.* v. *Hardman,* P. U. R. 1921C, 628; *Re Common-*

*wealth Transportation,* P. U. R. 1920D, 588; *Re C. S. Fagen et al., Receivers* v. *Pittsburg Transportation Co.,* P. U. R. 1919E, 990; *Lehigh Valley Transit Co.* v. *Robert H. Bauder et al.,* P. U. R. 1917C, 627; *Memphis St. Ry. Co.* v. *Rapid Transit Co. et al.,* P. U. R. 1916A, 834; *Central R. R.* v. *Penn. R. R.,* 31 N. Y. Eq. 475, 493; *Raritan & Del. Bay R. R. Co.* v. *Del. & Raritan Canal,* 18 N. J. Eq. 546, 569, 572·; *Penn. R. R.* v. *Nat. Ry. Co.,* 23 N. J. Eq. 441.

WATSON, C. J.   The petitioner, John B. James of Bennington, on the 22d day of August, 1923, brought his petition to the Public Service Commission, setting forth, among other things, that he is the owner of three motor busses therein described, which he desires to operate and is operating over the streets and highways between the Village of Bennington and the Village of North Bennington; that the nature and character of the service to be rendered by him is receiving, transporting, and discharging passengers for hire; that the petitioner is furnishing such service between the points named, and has so done for more than eighteen months (then) last past.   The prayer of the petition is, that the Commission, in accordance with the provisions of Act No. 91 of the Laws of 1923, make such regulations as it deems requisite, if any, for the safety and protection of the public, and as to bonds or other security for indemnifying the public.

Section 1 of the Act defines a motor bus, and no question is made but that the petitioner's vehicles, operated by him, fall within the definition thus given.   Section 2 declares every person or corporation engaged in the business of operating a motor bus, as defined in section 1, to be a common carrier (with an exception not material to mention further).   Section 3, after stating its subject-matter as "Same, regulations," exclusively provides: "Such common carriers shall furnish such motor busses and operate the same in such manner, as to afford safety and protection to their passengers and to the public."   Section 4, after stating its subject-matter as "Supervision of Public Service Commission," provides: "The Public Service Commission shall have general supervision and jurisdiction of such common carriers, and the provisions of Chapter 215 of the General Laws shall, so far as may be, apply thereto."   Section 5, provides that the

Public Service Commission shall have jurisdiction to require of such common carrier, reasonable indemnity for injuries to the person or property of passengers caused by unlawful action or neglect of such carrier. And section 6, provides a penalty for a violation of law, etc.

Subsequent to the time when the Act of 1923 took effect, the Commission issued for guidance to persons desiring to operate motor busses under the provisions of that Act, General Order No. 7, which provides as follows: "If, upon hearing on such petition, it is found that the granting thereof will promote the general good of the State, the Commission shall determine and fix the amount and form of indemnity that shall be furnished by the petitioner in accordance with the provisions of section 5, of said Act; and upon the filing with the Clerk of said Commission of the bond or other form of indemnity as fixed, approved by said Commission, the Clerk of said Commission shall issue a permit to the petitioner to operate such busses over such routes as are described in such permit. Said permit shall be good from the date of its issue to and including the 31st day of December next following unless sooner revoked and not after the last named date."

Before introducing any evidence, the petitioner filed with the Commission what he called a "plea to jurisdiction," a copy of which is made a part of the report. While such formal pleading is neither required nor appropriate in such proceedings, the "plea" filed was very properly treated by the Commission as a statement of the petitioner's claim that the Commission had not the power to restrict competition or deny his right to operate his motor busses as he was doing and intended to continue to do, he being willing to conform to all reasonable operating regulations, and furnish the requisite indemnity. The petitioner introduced evidence from which the Commission finds that he has three properly-equipped motor busses, each with a seating capacity of twelve people, which he desires to use in the operation of a motor bus line between Bennington and North Bennington (in carrying passengers for hire), and which he has been so operating since February 1, 1922, and that he is ready and willing to comply with all reasonable regulations which the Commission may make concerning such operation, and to furnish the indemnity to secure the persons and property of passengers against

injuries. But the petitioner introduced no evidence as to the manner in which or the extent to which, the public in the vicinity of Bennington and North Bennington is at present being served with facilities for the transportation of passengers and their property, nor upon the question of whether there is a public de-- mand for the motor bus service which the petitioner desires to engage in. At the close of the petitioner's evidence his counsel stated that he did not intend any evidence which he had intro- duced to apply on these questions, and the ruling made as here- inafter stated was with the understanding that upon these issues no evidence had been introduced.

The Commissioners state in their report that it seems to them that the Legislature passed Act No. 91 under the belief that the- time had come to determine in a formal way to what extent our highways should be used by business similar to that under con- sideration, and to limit such use to the public need; and that fol- lowing this interpretation of the enactment, and for lack of any evidence as to the manner in which and the extent to which the traveling public is now served with means of conveyance over the route in question, or as to the public demand for such service, or tending to show that the proposed service would promote the general good of the State, the petition is dismissed and exception saved.

Stated in concrete form, the sole question then is: Had the Public Service Commission, by virtue of its power of general supervision and jurisdiction of such common carriers, under sec- tion 4 of said Act, including the provisions of Chapter 215 of the General Laws, applicable thereto, authority to prohibit the peti- tioner's continuation in such public employment over the route in question, in which employment he was engaged continuously for more than a year before Act No. 91 was passed, and thence- forth to the time of the hearing on the petition, there being no evidence introduced by him upon the question of public con- venience or necessity, he being ready and willing to comply with all reasonable regulations within the power of the Commission to prescribe?

[1, 2] While at common law a carrier of passengers is not, technically speaking, a common carrier, when the petitioner en- gaged in the business of operating motor busses and therein transporting passengers for hire between the two villages named,

he held himself out as a common carrier of passengers, thereby devoting his vehicles to a public use, and by the statute in question was declared to be a common carrier; and being such carrier he was subject to reasonable regulations under the police power of the State. The fact that he was not operating under authority of a charter from the State, but by individual enterprise, makes no difference in this respect. *State* v. *Edwards*, 86 Me. 102, 29 Atl. 947, 25 L. R. A. 504, 41 A. S. R. 528. In *Munn* v. *Illinois*, 94 U. S. 113, 24 L. ed. 77, the Supreme Court of the United States, speaking through Mr. Chief Justice Waite, said: "Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use; but, so long as he maintains the use, he must submit to the control. * * * * * * * Common carriers exercise a sort of public office, and have duties to perform in which the public is interested * * * *" See also *Terminal Taxicab Co.* v. *Kutz*, 241 U. S. 252, 60 L. ed. 984, 36 Sup. Ct. 583, Ann. Cas. 1916D, 765.

From the foregoing authorities it is certain that in operating his motor busses as and for the purpose stated above, before and down to the time the Commission made the order in question, the petitioner was exercising a lawful right, in a lawful manner.

[3, 4] It is asserted in petitioner's brief by way of argument that under the Constitution and laws as they now exist, it is doubtful if the Legislature itself could do what the Commission has undertaken to do, namely, prohibit him from continuing in such public service under regulations lawfully prescribed. But we give the constitutional doubt thus expressed no heed, for the question before us is not so circumstanced as to necessitate an inquiry concerning what the Legislature might do in the respect named, but rather what it did do by way of conferring power upon the Public Service Commission, and this question must be determined according as the power is expressly granted by the statute under consideration, or necessarily im-

plied as essential to the proper exercise of the power expressly granted. Coll. Pub. Ser. Com., §§ 171, 172; *Bosquet* v. *Howe Scale Co.*, 96 Vt. 364, 120 Atl. 171. "Such a commission is merely an administrative board created by the state for carrying into effect the will of the state as expressed by its legislation." *Reagan* v. *Farmers Loan & Trust Co.*, 154 U. S. 362, 38 L. ed. 1014, 14 Sup. Ct. 1047. Although the Legislature may delegate to an administrative body the execution in detail of the legislative power of regulation, such power may be exercised directly by the Legislature itself. *Honolulu Rapid Transit & L. Co.* v. *Hawaii*, 211 U. S. 282, 53 L. ed. 186, 29 Sup. Ct. 55; *Louisville & N. R. R. Co.* v. *Garrett*, 231 U. S. 298, 58 L. ed. 229, 34 Sup. Ct. 48. And it was so exercised in regard to the class of common carriers named in the particular statute under consideration. Adverting to section 3 of the Act, fully quoted above, it will be seen that the entire section is confined to stating regulative requirements applicable only to such common carriers; they "shall furnish such motor busses and operate the same in such manner, as to afford safety and protection to their passengers and to the public." These regulations, coming as they do directly from the exercise of the power by the Legislature itself, are controlling. First, because of their source. Secondly, because they are special provisions of law relating to this class of common carriers only, and so have the effect of excluding the application of any provision on the same subject relating to common carriers in general. *State* v. *Stanley*, 82 Vt. 37, 71 Atl. 817. The only regulating power granted by that Act to the Commission is found in section 5, by which that body, "shall have jurisdiction * * * to require of every such common carrier," reasonable indemnity for injuries, etc.

The authority of "general supervision and jurisdiction of such common carriers," placed upon the Commission by section 4, is not regulative in character. The word "supervision," as defined in Webster's Int. Dict., means: "Act of overseeing; inspection; superintendence; oversight." In Nebraska, the provision giving to the board of transportation, "general supervision of all railroads operated by steam in the state," was under consideration by the highest court in that state, in *State* v. *F. E. & M. V. R. Co.*, 22 Neb. 313, 35 N. W. 118. The court quoted Webster's definition of "supervision," given above, and con-

strued the provision accordingly. The constitution of Missouri provides that "supervision of instruction" in the public schools shall be vested in the board of education. This provision has been held to "mean no more than a general oversight over the matters of instruction." *State* v. *Bronson*, 115 Mo. 271, 21 S. W. 1125. To the same effect are *Great Northern R. R. Co.* v. *Snohomish County*, 48 Wash. 478, 93 Pac. 924; *Vantongeren* v: *Heffernan*, 5 Dak. 180, 38 N. W. 52. It is apparent from the Act itself that the Legislature had in mind the distinction between "regulation" and "supervision," for the former is there given as the character of the subject-matter or text of section 3, and the latter, as the character of the subject-matter or text of section 4. The "jurisdiction" conferred in section 4 does not indicate a different character; for that word, coupled as it is with the words "general supervision," is to be used in the same sense. *Cole* v. *Walsh*, 97 Vt. 256, 122 Atl. 664. In other words, jurisdiction is there given for the purpose of enabling the Commission to carry out the requirements of "general supervision," as it is in the next section for the purpose of enabling it to carry out the requirements for indemnity.

The like coupling in section 4 of the provisions of Chapter 215, so far as they "apply thereto," shows that such provisions are to be understood in the same sense. The words "apply thereto" have reference to the "general supervision" provided for in that section, and to nothing else.

It results from what we have said that Act No. 91, Laws of 1923, including Chapter 215 of the General Laws so far as applicable thereto, does not make the right of such common carriers to operate motor busses in the public service, to depend upon public convenience and necessity, or either; and the order of the Commission dismissing the petition, for want of an affirmative showing of this character, was in excess of its authority and cannot be upheld. The statement of the Interstate Commerce Commission in an opinion written by Judge Cooley (*In re Louisville & Nashville R. R. Co.*, 1 Inters. Com. Rep. 31, 57), concerning the effect of the Act to Regulate Commerce, on common carriers, and quoted with approval by the Federal Supreme Court in the case of *Interstate Commerce Commission* v. *Alabama M. Ry. Co.*, 168 U. S. 144, 42 L. ed. 414, 423, 18 Sup. Ct. 45, is quite applicable to common carriers under the statute

24

so far as here in question: ''That which the act does not declare unlawful must remain lawful if it was so before, and that which it fails to forbid the carrier is left at liberty to do without permission of anyone.''

*The order of the Public Service Commission is reversed, and the cause remanded for such further proceedings as, under the law, the case requires.*