IN RE JOHN B. JAMES.

Special Term at Rutland, November, 1925.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed January 6, 1926.

*Regulation of Motor Vehicles—No. 74, Acts 1925—Construction of Statutes—Constitutional Law—Right to Use of Highways —Due Process of Law—Power of Public Service Commission to Regulate Use of Highways by Common Carriers— Public Service Commission Not Granted Discretionary and Arbitrary Powers Respecting Use of Highways by Common Carriers.*

1. No. 74, Acts 1925, relating to public service motor vehicles operated for hire over fixed routes, *held* not to repeal No. 86 of laws of same legislative session, as it will not be supposed that Legislature, with such measures concurrently before it, enacted both with intention that only the one to which the Governor happened last to affix his signature should become the law, but the two statutes are to be considered together and, if possible, the legislative intent ascertained and given effect.

2. Legislative intent must first be sought in the language of the statute itself, taken as a whole, and, if the evident intention thus gathered is different from the literal import of terms employed to express it in a particular part of the law, such intention should prevail, but where language of statute leaves intent in doubt, extrinsic matters, such as history of statute's enactment, previous law on subject, evil to be corrected, etc., may be considered in determining legislative intent.

3. No. 74, Acts 1925, construed in connection with No. 86 of same legislative session, *held* to have been intended by Legislature to limit use of public highways of State by common carriers to such operations as would promote general good of State, irrespective of effect of such limitation upon competition.

4. Where one statute deals with a subject in general and comprehensive terms, and another deals with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, but to the extent of any repugnancy between them, the special will prevail over the general statute, regardless of their order or dates, the special statute being regarded as an exception to, or qualification of, the general one.

5. No. 74, Acts 1925, relating to public service motor vehicles operated for hire over fixed routes, being special in character, since it has to do only with particular business to which it relates, constitutes an exception to, or qualification of, G. L. 5068, forbidding such construction of any statute as will prevent or restrict competition in the several businesses enumerated in G. L. 5056, of which business of using motor vehicles as common carriers is one by virtue of No. 86, Acts 1925, being general in character and applying indiscriminately to all such businesses.

6. Refusal by Public Service Commission, acting under No. 74, Acts 1925, of authority to petitioner to operate motor vehicles for hire over a fixed route, in competition with trolley line, on ground that general good of public would not be promoted thereby, *held* not to deprive petitioner, without compensation, of a vested right, acquired through purchase of equipment and prior uses of highway, to continue such use, highways belonging to State, and both they and common carriers being subject to police powers of State.

7. A citizen can acquire no vested or inherent right to use State's

highways for commercial purposes, the right to use of such highways, common to all, being the ordinary use made thereof, and not including special and extraordinary use of a common carrier for commercial purposes or private gain, which Legislature may wholly or partially deny as may best promote good of the public.

8. No. 74, Acts 1925, relating to public service motor vehicles operated for hire over fixed routes, and forbidding their operation until the owners shall obtain certificate from Public Service Commission that the service which bus shall furnish and its operation will promote general good of State, does not deprive person refused permission to operate such a bus of property without due process of law, in violation of Fourteenth Amendment to Federal Constitution, in that no definite guides, rules, regulations, or limitations are provided to control Commission in its decision, since Legislature did furnish guide for and limitation to Commission's action in the phrase "the general good of the State."

9. No. 74, Acts 1925, granting Public Service Commission power to regulate motor vehicles operated for hire over fixed route in accordance with general good of State, *held* not in contravention of Fourteenth Amendment to Federal Constitution as delegating legislative power to Public Service Commission.

10. In defining duties of an administrative body, Legislature can ordinarily give it general rules for guidance by defining certain ultimate facts which it must find to exist before taking certain prescribed action, and afford an appeal to courts for correction of any erroneous action as to a judicial or quasi judicial matter.

11. No. 74, Acts 1925, granting Public Service Commission power to regulate motor vehicles operated for hire over fixed route in accordance with general good of State, *held* not to vest Public Service Commission with any judicial function not common to all regulative measures of this character.

12. Such act *held* not to confer upon Public Service Commission discretionary or arbitrary powers in granting or withholding of general good certificates because of mere fact that Commission is given authority to decide whether general good of State will be promoted by proposed operation of particular individual.

APPEAL from decision and order of Public Service Commis-

sion, Bennington County, denying petition of John B. James for certificate to operate certain motor bus line. Petition was opposed by the Vermont Company, a competing electric trolley line. The petitioner appeals. The opinion states the case. *Affirmed.*

*James K. Batchelder* for the petitioner.

*Robert E. Healy* for trolley company.

SLACK, J. The petitioner made application to the Public Service Commission, in accordance with the provisions of Act No. 74 of the Laws of 1925, § 2, for a certificate authorizing him to operate motor busses on the public highway in and between the villages of Bennington and North Bennington in this State. After due notice and hearing on the merits of his application, the Commission found and stated the facts, and made an order denying the application. From that order this appeal was taken.

Whether the questions relied upon by the petitioner are raised in such a manner as to require consideration we do not pause to determine, since, although this matter is called to our attention in the brief of the Vermont Company, it was in effect waived on oral argument.

The findings, in part, are these: The Vermont Company, a duly chartered and organized corporation, owns and operates an electric trolley line which runs from the western boundary of the State, where it connects with the line of the Berkshire Street Railway Company, through the villages of North Bennington and Bennington to some point in Massachusetts. This line has been in operation about twenty-eight years and is used not only for passenger traffic but also for hauling freight from sidings of the Rutland Railroad to the manufacturing plants of several companies, and because of its connection with the Berkshire Street Railway it furnishes passenger service to points in New York and Massachusetts. The service furnished by that company is regular and satisfactory. The petitioner began operating motor busses in and between the villages of North Bennington and Bennington in February, 1922, and continued such operation, we infer, until Act No. 74 of the Laws of 1925 became effective. From the North Bennington post office to the end of the trolley line on Branch Street in the village of Bennington,

a distance of about 6.5 miles, the route over which petitioner has operated, and desires to operate, is identical with the trolley line, both being on the same highway, except for about a mile where the two routes are from one to four blocks apart. The Vermont Company never has paid any dividends and has defaulted the interest on its bonded indebtedness for the last four or five years. Its earnings are very materially less on that section of its road between North Bennington and Bennington than on any other portion of its route.

The Commission concludes its decision and order in the following language: "Taking into consideration the service rendered by the Vermont Company as compared with that rendered by the petitioner, especially the fact that the electric road is a connecting line between points in Massachusetts and New York and that it is used by several manufacturing companies as a freight carrier, we are of the opinion that its continuous and successful operation is of much greater importance in promoting the general good of the State than are the operations of the petitioner. We hold that the petitioner's operations are seriously competing with those of the Vermont Company and that the transportation requirements between Bennington and North Bennington do not demand the operation of both services and that the trolley line can meet all reasonable public demands. For the above reasons we find that the general good of the State will not be promoted by the operation of petitioner's busses between Bennington and North Bennington and therefore deny the petition."

None of the findings were excepted to, nor is it claimed that they do not fully sustain the order; but the petitioner insists that the Commission had no authority to deny his application because the operation of his busses, if permitted, would be in competition with the Vermont Company's business, because the powers conferred upon the Commission by Act No. 74 of the Laws of 1925 are subject to the limitation contained in G. L. 5068, since by Act No. 86 of the same session motor vehicles used as common carriers were added to the public utilities over which the Commission is given general supervision by G. L. 5056.

Chapter 216 of the General Laws, which comprises sections 5055 to 5068 inclusive, relates to the powers and duties of the Public Service Commission respecting certain public service companies. Section 5055 defines the meaning of the word "com-

pany'' or ''companies'' as used in that chapter. Section 5056 enumerates the different businesses over which the Commission is given general supervisory powers. Other sections of the chapter define the jurisdiction of the Commission, prescribe the mode of procedure, etc. Section 5068 provides that: ''The construction placed upon any statute shall not be such as to give the public service commission power to prevent or restrict competition or limit the number of persons or companies who may engage in the business of furnishing light, heat, power, or any other business subject to supervision under the provisions of this chapter, in any town.''

By Act No. 86 of the Laws of 1925, which is amendatory of section 5056, motor vehicles used as common carriers are added to the businesses enumerated in that section, and, consequently, the Commission's authority over them is subject to the limitation respecting competition contained in section 5068, unless such limitation is rendered inapplicable by the provisions of Act No. 74.

Act No. 74 is entitled, ''An Act relating to public service motor vehicles operating over fixed routes.'' Section 1 provides: ''Every person, association or corporation owning or operating a motor bus, which indiscriminately carries passengers, freight or express, for hire, regularly over a fixed route or between fixed termini * * * * is hereby declared a common carrier and subject to the jurisdiction of the public service commission, and, while so operating, to such reasonable rules and regulations as said commission may prescribe with respect to routes, fares, schedules, continuity of service and the convenience and safety of passengers and the public.'' Section 2 provides: ''A person, association or corporation shall not operate such a motor bus * * * until the owner thereof shall have obtained a certificate from the public service commission specifying the route over which such motor bus * * * may operate, the number of passengers which such motor bus may carry at any one time, the service that such motor bus * * * shall furnish, and that the operation of such motor bus * * * over such route will promote the general good of the state,'' etc.

The legislative history of Acts Nos. 74 and 86 shows that both originated in the Senate—in fact were introduced by the same senator. The former was Senate Bill No. 16 and the latter was Senate Bill No. 41. No. 16 was introduced January 23,

was ordered to a third reading in the form in which it passed February 17, passed the Senate the day following, passed the House March 17, and was approved March 18. No. 41 was introduced February 9, was ordered to a third reading February 17, passed the Senate the day following, passed the House March 12, and was approved March 16. Those sections of Act No. 74 here involved took effect, by special provision, from its passage. Act No. 86 took effect, under the general law (G. L. 38), June 1.

While it must be admitted that the situation thus presented is somewhat novel, we think that the difficulty arising therefrom is more imaginary than real.

[1, 2] In the first place, did Act No. 74 repeal Act No. 86? This question must be answered in the negative. The action of both houses respecting these measures, as above indicated, was such as to admit of no other conclusion. It will not be supposed that the Legislature, whose proceedings are presumed to be conducted with wisdom and deliberation, with these measures concurrently before it, gravely and solemnly passed them through all the various stages and sent them to the Governor, intending that the one, and that alone, should become a law of the land to which he happened last to affix his signature.

We must, therefore, consider the two statutes standing together and, if possible, ascertain and give effect to the legislative intent as thus expressed; because the intent is the vital part, the essence of the law—"the spirit which gives life to a legislative enactment." Such intent must be first sought in the language of the statute itself, taken as a whole. If the evident intention to be gathered from the whole law is different from the literal import of the terms employed to express it in a particular part of the law, that intention should prevail, for that, in fact, is the will of the Legislature. If the language of the statute leaves the intent in doubt, the court may call to its aid extrinsic matters, such as the history of the statute's enactment, the previous law bearing on the subject, the evil to be corrected, etc., because the Legislature must have resorted to the same means to arrive at its purpose.

[3] That the Legislature intended to limit the use of the public highways of the State by common carriers to such operations as would promote the general good of the State, irrespective of the effect of such limitation upon competition, seems clear from the language of the statutes when read together, but all

doubts concerning this are removed when existing conditions and the evil the Legislature sought to correct are considered. Probably those conditions and evils are nowhere better illustrated than in this case. Here was a section of the State served by an existing trolley line which was meeting "all reasonable public demands." The petitioner was operating motor busses over a portion of the route covered by the trolley line, using for that purpose the public highways, with no excuse for so doing, so far as the general good of the State was concerned, and the Commission was powerless to interfere under the law as it stood prior to the enactment of Act No. 74. See *In re James*, 97 Vt. 362, 123 Atl. 385. Not only is it to be presumed that the Legislature knew of existing conditions, but it appears that those conditions were actually called to its attention both by the Governor, in a message addressed to the General Assembly (See Senate Journal, Biennial Session 1925, p. 465), and by the Public Service Commission in its biennial report to the same body. In this situation, no doubt can be entertained as to what the Legislature had in mind and intended to accomplish by the provision of Act No. 74 here involved. Nor is there any difficulty in giving to that provision the full force intended, unless to do so will offend constitutional inhibitions, a question to be considered later.

[4, 5] It is a cardinal rule of statutory construction that where one statute deals with a subject in general and comprehensive terms, and another deals with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy (*State* v. *Stanley*, 82 Vt. 37, 71 Atl. 817; 36 Cyc. 1151) ; but to the extent of any repugnancy between them, the special will prevail over the general statute, regardless of their order or dates (*Deneen* v. *Unverzagt*, 225 Ill. 378, 80 N. E. 321, 8 Ann. Cas. 396; *Lawyer* v. *Carpenter*, 80 Ark. 411, 97 S. W. 662; *Chamberlain* v. *State*, 50 Ark. 132, 6 S. W. 542; *Jones* v. *Broadway Roller Rink Co.*, 136 Wis. 598, 118 N. W. 170, 19 L. R. A. [N. S.] 907; *Smith* v. *People*, 47 N. Y. 330; *Hawkins* v. *Bare*, 63 W. Va. 431, 60 S. E. 391; *City of Cincinnati* v. *Holmes*, 56 Ohio St. 104, 46 N. E. 514; *In re James*, 97 Vt. 362, 132 Atl. 385; 38 Cyc. 1151) ; the special statute being regarded as an exception to, or qualification of, the general one. The statute before us clearly falls within the latter provision of this rule. G. L. 5068 which forbids such construction of any statute as will

prevent or restrict competition in the several businesses enumerated in G. L. 5056, of which by virtue of Act No. 86 motor vehicles used as common carriers is one, is general in character, and applies indiscriminately to all such businesses; while Act No. 74, the administration of which may indirectly result in preventing or restricting competition, is special in character, since it has to do alone with the particular business to which it relates. The latter statute constitutes an exception to or qualification of, the former. This construction gives force and effect to both statutes, and manifestly expresses the legislative intent.

[6, 7] The claim is made in petitioner's brief that Act No. 74 as construed by the Commission is unconstitutional, because it deprives him of a vested right he has acquired through the purchase of equipment and prior use of the highway to continue such use, without compensation, and for the benefit of a competitor; because the Commission has no authority to prohibit his operations under proper restrictions; and because he has an inherent right to use the highway "under the very fabric of society." These questions are not sufficiently briefed to require attention, in fact they are not briefed at all; no authorities are cited or argument advanced in support of either of them, nor even is attention directed to the constitutional provisions, whether State or Federal, which it is claimed are violated. However, the answer is that the highways belong to the State (*Packard* v. *Banton,* 264 U. S. 140, 68 L. ed. 596, 44 Sup. Ct. 257; *Davis* v. *Massachusetts,* 167 U. S. 43, 42 L. ed. 71, 17 Sup. Ct. 731), and are subject to the police powers of the State (*Hendrick* v. *Maryland,* 235 U. S. 611, 59 L. ed. 385, 35 Sup. Ct. 140). So, too, motor vehicles used as common carriers are subject to the same powers. *In re James,* 97 Vt. 362, 123 Atl. 385. While a citizen has the right to travel upon the highways, and transport his property thereon, in the ordinary course of life and business, he can acquire no "vested" or "inherent" right to use them for commercial purposes. The right, common to all, to the use of highways, is the ordinary use made thereof, and by no means includes the special and extraordinary use of a common carrier for commercial purposes, or private gain. The latter use, the Legislature in the exercise of its policy powers may wholly deny, or may permit it to some and deny it to others, as will best promote the general good of the public. See *State* v. *Darazzo,* 97 Conn. 728, 118 Atl. 81, and *Lane* v. *Whittaker,*

18

(D. C.) 275 Fed. 476, where the constitutionality of the Connecticut Motor Vehicle Act (Pub. Act 1921 ch. 77), which in all essential features is, in effect, like the statute under consideration, was sustained. See, also, *Maine Motor Coaches, Inc.* v. *Public Utilities Commission,* 125 Me. 63, 130 Atl. 866.

[8] The petitioner further claims that the act in question offends the 14th Amendment to the Federal Constitution, in that it deprives him of property and its use and income and the right to acquire property, without due process of law; and also deprives him of the equal protection of the law, "in this: that the act in granting to the Public Service Commission a right to refuse a permit to the petitioner furnishes them with no definite guides, rules, regulations or limitations to guide or control them. It makes them not merely an administrative body but legislative and judicial," etc. The particular complaint, which is that quoted, should be borne in mind. The answer to the first proposition is that the Legislature did furnish a guide for, and limitations to, the Commission's action in language so clear that all who run may read—namely, "the general good of the state." That is the pole star by which the Commission is to be guided in the discharge of the duties imposed upon it by this statute. None other is required. *State* v. *Darazzo, supra.*

[9, 10] When the various provisions of this act are carefully examined, it is apparent that the Legislature has not delegated any legislative powers to the Commission, but, on the contrary, has defined the duties of that body with as great particularity as possible. In defining the duties of an administrative body, the Legislature can ordinarily only give it general rules for its guidance, by defining certain ultimate facts which it must find to exist before taking certain prescribed action, and afford an appeal to the courts for the correction of any erroneous action as to a judicial or quasi judicial matter. This the Legislature has done. The ultimate fact to be determined is: Will the applicant's operations in the manner proposed promote the general good of the State? This question, the Commission is to determine upon proof in the manner prescribed by section 2 of the act; and by section 6 of the act any person, association, or corporation aggrieved by any act or order of the Commission may have the same reviewed by this Court on appeal.

[11] Nor is the Commission vested with any judicial functions not common to all regulative measures of this character.

To hold that a so-called administrative body constitutionally can only be authorized by the Legislature to perform ministerial acts would be contrary to all precedents, and deprive the State of the use of an essential arm of service.

[12]   Neither can it be said that the act confers upon the Commission discretionary or arbitrary powers in the granting or withholding of general good certificates.   The mere fact that the Commission is given authority to decide whether the general good of the State will be promoted by the proposed operations of a particular individual does not make their action a matter of discretion and arbitrary, unless we use these words in a sense that would class the decision of a court upon a contested question of fact as a matter of discretion and arbitrary.

None of the constitutional questions raised by the petitioner have merit.

*The order of the Public Service Commission denying petitioner's application is affirmed.   Let the result be certified to that Commission.*