STATE *v.* EVELYN GAMELIN.

February Term, 1940.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 7, 1940.

*Russell F. Niquette* for the respondent.

*Theodore E. Hopkins,* City Attorney of the City of Burlington, for the State.

JEFFORDS, J. The complaint contains four counts each of which charges the respondent, a resident of Winooski, with the violation of the so-called Taxicab Ordinance of the City of Burlington. The first count charged the respondent with advertising a certain motor vehicle for use as a taxicab and with using the same to carry passengers for hire on a certain day on the public highways of Burlington from points in Winooski to points in Burlington without said motor vehicle being licensed as a taxicab under the provisions of the ordinance. The second count is the same as the first except that it alleges a carrying from points in Burlington to those in Winooski. The third count alleges the use of said motor vehicle as a taxicab in the carrying of a passenger from a point in Burlington to a point in Winooski and with charging only ten cents for the entire trip and without making a separate charge of twenty-five cents for that part of the trip which was within Burlington as required by the ordinance. The fourth count is the same as the third except that it alleges a carrying from a point in Winooski to one in Burlington.

The respondent admitted the facts alleged in the four counts to be true and also made the following admission:

"That on said 27th day of June, 1939, and continuously for a period of nearly a year before that date, she regularly advertised for use and regularly used the motor vehicle described in said complaint, namely, said sedan now bearing 1939 Vermont registration No. 16432, in the business of carrying passengers for hire on the public highways of said Burlington between points in the City of Winooski and points in the City of Burlington and only for trips between points in one city and points in the other, and in said business received passengers in Burlington to be carried to points in Winooski and discharged at points in Burlington passengers received at points in Winooski."

Trial was had by the Chittenden Municipal Court without a jury. The court made findings of fact substantially in accordance with the admissions of the respondent. The respondent then made a motion which was treated by the court as one for judgment notwithstanding the findings. This motion was overruled *pro forma* on each ground stated and an exception granted the respondent. The court then entered a judgment of guilty on each of the four counts, imposed sentence and stayed execution of the same.

By sec. 7 of No. 29 of the Acts of the special session of the Legislature of 1935-1936 that part of the charter of the City of Burlington relating to the power of granting of licenses by the city council to the owners and drivers of taxicabs and other named persons was amended so as to give the council power to: "License porters and cartmen who receive and discharge their loads within the city; to license the owners and drivers of taxicabs, jitneys, and motor vehicles for hire, receiving or discharging passengers, with or without baggage, within the city, whether or not such vehicles are engaged in carrying passengers entirely within the city; to prescribe the duties and privileges of such owners and drivers; to fix and regulate rates of fare, including maximum and minimum rate or rates, for any such transportation of passengers within the city; to license and regulate all

such vehicles,'' etc. This act went into effect on January 24, 1936.

The ordinance in question was passed on March 23, 1936, was approved three days later and was in effect at the time of the alleged violations of the same. In sec. 1 of the ordinance it is declared that the business of operating motor vehicles for the carriage of passengers for hire along the public highways of the city is one affected with a public interest and reasons are set forth for the necessity of regulation of such vehicles. Sec. 2 provides that: ''A taxicab for the purposes of this ordinance, shall include any motor vehicle regularly used in the business of carrying passengers for hire, with or without baggage, on the public highways of the city, and which receives or discharges passengers within the city limits, or advertises for such use,'' etc. Sec. 3 provides that no person shall advertise for use as a taxicab or use or operate as a taxicab upon any public highway within the city any motor vehicle unless the same is licensed for such use. Sec. 4 requires the licensing of taxicabs and taxi-drivers. By sec. 6 the fee for a license of the owner of a taxi-cab to drive the same is fixed at one dollar and that for the vehicle is five dollars. Sec. 7 fixes the rates to be charged. For conveyance within the city a flat rate of twenty-five cents must be charged. It is then provided that as to trips which either start from a point within the city to a point without or which start from without and terminate at a point within a separate charge of twenty-five cents must be made for that part of the trip which was within the city limits.

The respondent based her motion for judgment on several grounds. These have been reduced in her brief to five in number. Although some are substantially the same in effect we will consider them separately and in the order presented in the brief.

The first ground is twofold. It is in substance that the ordinance is null and void because, (a), the language in the charter does not confer authority on Burlington to pass an ordinance affecting a nonresident whose taxi business is of the nature of the respondent's and, (b), that, moreover, the Legislature has no power to authorize a city to pass an ordinance requiring such a person engaged as an interurban carrier to take out a license.

250

██ It does not require any intensive study of the language of the charter amendment to determine that the power was granted to pass an ordinance requiring certain carriers engaged in interurban business as well as those engaged in intracity business to procure licenses. Among such named carriers are the owners and drivers of taxicabs. The respondent in support of her contention claims that the use of the words, ''within the city,'' clearly indicate that the Legislature intended that the traffic for hire must originate and end within the city. She apparently wishes us to ignore the well-known rule that all the language of a statute must be considered in ascertaining the intention of the Legislature. The words, ''receiving or discharging passengers,'' and ''whether or not such vehicles are engaged in carrying passengers entirely within the city,'' taken in connection with the other provisions of the statute clearly show that the Legislature did not intend to restrict the power of the city as claimed by the respondent. Another very significant fact to be taken into consideration in determining this intention is the difference in the wording of the power given to license porters and cartmen. Such are those who receive *and* discharge their loads within the city. By the use of the conjunctive it is apparent that the Legislature intended to restrict the licensing power as to these persons to those engaged only in intracity business. The use of the disjunctive ''or'' between the same words as had previously been used in the conjunctive and as applied to the class within which the respondent comes clearly indicates an intention to change and broaden the power of licensing as to the latter class so as to include those of that class who are engaged in interurban as well as intracity business.

██ ''The highways belong to the State (*Packard* v. *Benton*, 264 U. S. 140, 44 Sup. Ct. 257, 68 L. Ed. 596; *Davis* v. *Massachusetts,* 167 U. S. 43, 17 Sup. Ct. 731, 42 L. Ed. 71), and are subject to the police powers of the State (*Hendrick* v. *Maryland,* 235 U. S. 610, 611, 35 Sup. Ct. 140, 59 L. Ed. 385). So, too, motor vehicles used as common carriers are subject to the same powers. *In re James,* 97 Vt. 362, 123 Atl. 385. While a citizen has the right to travel upon the highways, and transport his property thereon, in the ordinary course of life and business, he can acquire no 'vested' or 'inherent' right to use them for com-

mercial purposes. The right, common to all, to the use of the highways, is the ordinary use made thereof, and by no means includes the special and extraordinary use of a common carrier for commercial purposes, or private gain. The latter use, the Legislature in the exercise of its police powers may wholly deny, or may permit it to some and deny it to others, as will best promote the general good of the public.''

The above is a statement of our law as made by Slack, J., in the case of *In re James,* 99 Vt. 265, 273, 132 Atl. 40, 44. To the same effect, *State* v. *Caplan,* 100 Vt. 140, 155, 135 Atl. 705; *Valcour* v. *Village of Morrisville,* 108 Vt. 242, 248, 184 Atl. 881.

■ We have not had occasion before to determine the question here presented in the case at hand. The foregoing broad principle, however, has been invoked as the basis of most if not all of the cases which we have examined where the power of the Legislature has been upheld to authorize a municipality to pass an ordinance requiring a nonresident taxicab operator engaged in interurban business to procure a license for that part of his business conducted within the municipality. The only restriction which we have found to be set forth in such cases is that the ordinance be not discriminatory against such nonresident. The decisions are not uniform on this question, as is shown by the annotation appearing in 31 A. L. R. at page 594. In our opinion the great majority of the cases and those containing the line of reasoning which appeals to us as being sound uphold the power in cases such as the one before us. Among these are the following: *City of Carterville* v. *Blystone,* 160 Mo. App. 191, 141 S. W. 701; *Star Transportation Co.* v. *Mason City,* 195 Ia. 930, 192 N. W. 873; *Cutrona* v. *Mayor and Council of Wilmington,* 14 Del. Ch. 208, 124 Atl. 658; *City of Bridgeton* v. *Zellers,* 100 N. J. L. 33, 124 Atl. 520; *Doskovitch* v. *Board of Public Utility Commissioners,* 103 N. J. L. 570, 138 Atl. 110; *Schultz* v. *Duluth,* 163 Minn. 65, 203 N. W. 449; *Emporium* v. *City of San Mateo,* 177 Cal. 622, 171 Pac. 434; *California Fireproof Storage Co.* v. *Santa Monica,* 206 Cal. 114, 275 Pac. 948; *Lowe* v. *Simmons,* 185 Miss. 88, 187 So. 214; *Commonwealth* v. *Beck,* 194 Mass. 14, 79 N. E. 744; *Commonwealth* v. *Theberge,* 231 Mass. 386, 121 N. E. 30; *Ex parte Beck,* 92 Tex. Cr. R. 20, 241 S. W. 172; *Sistrunk* v. *City of Paris,* 205 Ky. 835, 266 S. W. 656; *Commonwealth* v.

*Kelley,* 229 Ky. 722, 17 S. W. 2d. 1017. See, also, those cases cited in the first part of the annotation in 31 A. L. R., *supra.* Many of the cases just cited have facts nearly if not entirely identical with those in the case at bar.

Most if not all of the cases cited by the respondent and those generally which hold contrary to the majority can be distinguished either because there was lack of statutory authority to pass the ordinances in question or because the acts complained of in violation of the ordinances were single or isolated and therefore did not constitute a "doing of business" within the municipality by those respondents. Whatever may have been the rule formerly in New Jersey the two cases from that jurisdiction, *supra,* show that it is now with the majority. The language in *Commonwealth* v. *Stodder,* 2 Cush. (Mass.) 562, 48 Am. Dec. 679, much relied upon by the respondent was mere *dictum,* as is held in *Commonwealth* v. *Beck, supra.*

██ We must determine this case on the facts presented by the record and wholly without regard to any moot cases. As an aid to such determination we may take judicial notice of the geography of the State, including the location and extent of the various towns therein. *State* v. *Caplan, supra.* Winooski is contiguous to Burlington and the two constitute one thickly settled area. The record shows a regular advertisement for and the use of the streets of Burlington by the respondent in the business of carrying passengers for hire on the public streets of that city. It is clear to us that the Legislature intended to and did give to Burlington the authority to regulate by license under its police power an interurban carrier who was regularly using the streets of that city in his business but only as to that part of said business which was intracity. The respondent is such a carrier. She benefits regularly from the use of such streets and from police protection while within the city. We know of no good reason why she in turn should not be subject to regulation by license for the protection of the people of Burlington as well as should those whose similar business is conducted wholly within the city. There is no discrimination against the respondent either in the charter or the ordinance nor does either attempt to regulate that part of her business conducted without the city limits. On the authority of the majority of the cases heretofore cited and for

the reasons herein stated we hold against the respondent as to her first ground of the motion.

The second ground is based on the claim that the respondent did not operate a taxicab as defined by the ordinance and therefore was not subject to licensing by the city.

It is doubtful whether the respondent in view of her admissions and the findings based on them is in any position to make this claim. But passing over that question we find no merit in her contention. The authority to require a taxicab used in interurban traffic as was that of the respondent to be licensed is clearly given by the charter. The language of the ordinance defining a taxicab closely follows that of the charter relating to the licensing of owners or operators of the same.

The respondent lays much stress on the fact that in defining a taxicab the words, "whether or not such vehicles are engaged in carrying passengers entirely within the city," are omitted. She says that such omission clearly shows an intention that the ordinance shall not apply to taxicabs engaged only in interurban transportation.

██ The ordinance must be given a reasonable construction. *State* v. *Jarvis*, 89 Vt. 239, 243, 95 Atl. 541. Under such construction the language as used indicates without question an intention to include within the definition a taxicab used in interurban business of the nature of the respondent's.

█ It is set forth as the third ground that the section of the ordinance fixing the rates to be charged is null and void as being unauthorized by proper charter provision. Here again the respondent makes the mistake of placing undue emphasis on the words "within the city" as used in that part of the charter authorizing the fixing of rates. These words are used as qualifying "any such transportation of passengers." These latter quoted words in turn refer, as applied to this case, to such transportation by the owners or drivers of taxicabs as defined and set forth in the charter, which as we have seen includes interurban business such as the respondent's. When all the provisions of the charter are read together it is clear that the power was given to fix the rates to be charged for that part of such interurban transportation as the respondent was engaged in as took place within the city but no more.

The respondent does not question the power to grant to a municipality the right to fix rates for transportation only and wholly within its limits but she says that such power does not exist as to intercity traffic and she cites several cases which she claims support this contention. We have examined all of such cited cases and none of them are in point nor have we found in our examination of this question any which bear her out.

■ We have already seen that the power existed to authorize the requirement of a license by the respondent. It must necessarily follow that there was also power to provide for compliance with reasonable conditions to the granting of such license. One such it seems to us was the provision for fixing the rate to ,be charged for that part of the interurban trip which took place within the city limits. There was no discrimination here against the respondent nor any attempt to regulate her charges beyond such limits. Unless such right existed a situation might be created which would be unfair to the operators of taxicabs who conducted their business wholly within· the city and for one reason or another detrimental generally to the people of Burlington.

The next ground is that the ordinance sets an arbitrary, unjust and unreasonable rate of fare and thus violates the provisions of articles 7 and 9 of the Constitution of the State of Vermont and the 14th amendment of the Federal Constitution.

■ ■ The answer to this claim is that the burden was on the respondent to prove that the rate of fare was as claimed. *State* v. *Auclair*, 110 Vt. 147, 160, 4 Atl. 2d. 107; *Hodge Drive-it-Yourself Co.* v. *Cincinnati*, 284 U. S. 335, 52 Sup. Ct. 144, 76 L. Ed. 323. This she has failed to do. There is nothing in the wording of the section of the ordinance in question or from any apparent reason for its passage from which we can assume the iniquities attributed to it by the respondent. The claims made cannot be supported by mere speculation or conjecture. See the *Hodge* case, *supra.* The following cases have to do with ordinances similar to the one here which have been attacked in like manner and sustained for the reasons substantially as herein given: *Schultz* v. *Duluth, supra; Star Transportation Co.* v. *Mason City, supra; Fleming* v. *Wright,* 225 Ky. 129, 7 S. W. 2d. 832.

The last ground is to the effect that the charter amendment is

null and void because it violates article 5 of chapter I of our Constitution in that it delegates to a municipal corporation powers not local in scope.

This is, in effect, merely a restatement of the second part of ground one heretofore considered. No new reasons are stated in support of this fifth ground and the cases cited under it are of no help to the respondent. That the regulation of the business of the respondent regularly conducted as it was on the streets of Burlington was primarily one of local concern to that city and therefore a proper subject for the delegation of police power to it is impliedly recognized at least by the cases cited in the majority class, *supra*. The constitutionality of statutes conferring upon cities and town the power to license and regulate interurban carriers of passengers doing a business similar to that of the respondent is expressly upheld in *Commonwealth* v. *Theberge, supra; Lowe* v. *Simmons, supra.*

The *pro forma* ruling of the trial court was without error.

*Exceptions overruled.*